[Crim. No. 38599. Second Dist., Div. Four. Nov. 25, 1981.]

THE PEOPLE, Plaintiff and Respondent, v.
ALVIN LEONARD PEAVEY, Defendant and Appellant.

**COUNSEL**

Wilbur F. Littlefield, Public Defender, Dennis A. Fischer, Laurence M. Sarnoff, Richard P. Lasting and Melissa Hill, Deputy Public Defenders, for Defendant and Appellant.

George Deukmejian, Attorney General, Robert H. Philibosian, Chief Assistant Attorney General, S. Clark Moore, Assistant Attorney General, Robert F. Katz and Susan D. Martynec, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

**WOODS, J.**—Appellant was charged in count I of the information filed against him with murder, a violation of Penal Code section 187. It was further alleged in count I that he used a firearm within the meaning of Penal Code sections 12022.5 and 1203.06, subdivision (a)(1). He pleaded not guilty to the murder charge and denied the use allegation.

Eventually, appellant was tried before a jury on count I. The jury found him guilty of murder in the second degree and found the use allegation to be true.[1] Following the denial of appellant's motion for a new trial, he was sentenced to a term in state prison. He now appeals from the final judgment of conviction.

Appellant's sole contention on this appeal is that he was deprived of the right to a unanimous jury verdict guaranteed by article I, section 16 of the California Constitution. According to appellant, this deprivation resulted from circumstances surrounding a juror's expression of disagreement with the verdict following a poll of the jury during which each juror affirmed that the guilty verdict was his or hers.

The jury in appellant's case had deliberated for approximately one day when its foreman announced to the court that it had reached a unanimous verdict. The clerk then read the verdict and asked the jurors collectively if it was theirs. They responded affirmatively. At the request of defense counsel, the jury was then polled. As the clerk called the jurors by name, each stated "Yes" in response to the clerk's instruction that each juror "indicate by answering yes or no if the verdict read is your verdict." During the poll, the name of juror number 9, Mrs. Jean DuGais, was read twice, and she responded "Yes" on both occasions.

After the poll had been taken, the court directed the clerk to record the verdict as read. Defense counsel waived reading of the verdict as recorded. The court then thanked the jurors for their participation in the case and stated: "We will excuse you and discharge you at this time. We will ask you to report back to the jury assembly room." The court also indicated that the jurors were now free to discuss the case.

---

[1]Appellant does not contend that the evidence introduced at trial was insufficient to support the jury's verdict.

Immediately upon the conclusion of the court's remarks, and before any of the jurors had left the jury box, the following colloquy took place between the court and juror number 9, Mrs. Jean DuGais:

"JUROR NO. 9: Can I change? I'm sorry. I gotta go not guilty. I know it messes up everything, but in my mind I just can't. I knew I was going to do that, but I'm sorry, I just can't.

"THE COURT: What you are saying, then, is this verdict is not your verdict; is that right?

"JUROR NO. 9: Right. It wasn't. I went unanimous but I thought it was not guilty, and then I went guilty because everybody else did.

"THE COURT: You understand that you were instructed that each person must decide the case for themselves?

"JUROR NO. 9: I know.

"THE COURT: You are free to change your mind, of course, if, after listening to all the evidence and discussing it with your fellow jurors, you are convinced that your original idea was wrong; if you are not—

"JUROR NO. 9: I just can't. I thought about it and I just—not guilty.

"THE COURT: All right. Then we—

"JUROR NO. 9: I'm sorry. I'm sorry. Do you want me to say why?

"THE COURT: No, not at all. We are not entitled to know why. We don't want it discussed."

At the close of this exchange (approximately 12 p.m.), the jury was excused and directed to return to court at 1:30 p.m. The court instructed the jury not to discuss or talk about the case during the recess.

On the same date, beginning at 1:50 p.m., outside the presence of the jury, a hearing was held before the same trial judge on the status of the verdict. After considering arguments from both the prosecutor and defense counsel, the court concluded that, since it had discharged the jury, it retained no jurisdiction to conduct further proceedings. Defense counsel's request that the jury be directed to reconvene and continue deliberations was denied.

■ Appellant contends that the verdict reached in his case was not unanimous. He bases this assertion on Mrs. DuGais' attempt to repudiate her affirmation of the verdict, and on her statement that she believed appellant was not guilty but only voted for a guilty verdict because all the other jurors did so. Appellant further submits that, at the time this lack of unanimity was discovered, the jury had not been effectively discharged, since the jurors had not left the jury box and thus remained within the presence and control of the court. Under these circumstances, argues appellant, it was incumbent upon the trial court to order the jury to resume deliberations. That the court failed to do so, in appellant's view, deprived him of his constitutional right to a unanimous verdict by 12 jurors. We disagree.

Penal Code section 1164 provides: "When the verdict given is such as the court may receive, the clerk . . . must record it in full upon the minutes, and if requested by any party must read it to the jury, and inquire of them whether it is their verdict. If any juror disagrees, the fact must be entered upon the minutes and the jury again sent out; but if no disagreement is expressed, the verdict is complete, and the jury must be discharged from the case."

Section 1164 was cited in support of the decision in *People v. Grider* (1966) 246 Cal.App.2d 149 [54 Cal.Rptr. 497]. In *Grider*, the foreman of a jury in a robbery trial inadvertently signed the wrong verdict form, thereby returning a verdict of second degree rather than first degree robbery as the jury had intended. After the verdict was read in open court, the jury was asked if it was their verdict and they replied "yes." There was no request for a poll and after ordering the verdict recorded, the judge discharged the jury and adjourned the court. The error in the verdict was not discovered until the jurors had begun leaving the courtroom and conversing with other persons. Upon learning of the mistake, the judge reconvened the jury for further deliberations, and a verdict finding the defendant guilty of first degree robbery was quickly returned.

On appeal, the judgment of robbery in the first degree was ordered stricken. The court held that, under the circumstances of the case, the judicial process had come to a conclusion before the jury was reconvened, and the trial judge had therefore lost control over the jury. (*People v. Grider, supra*, 246 Cal.App.2d at p. 153.) In so holding, the court quoted with approval from *People v. Lee Yune Chong* (1892) 94 Cal. 379 [29 P. 776], wherein it was stated: "'With the assent of the

jury to the verdict as recorded, their functions with respect to the case cease, and the trial is closed'; and 'after the verdict is received and the jury discharged, . . . the control of the jury and of the court over such verdict is at an end. The court cannot alter it, nor can the jury be called to alter or amend it. As well might any other twelve men be called to alter it as the men who were jurors. The office of a juror is discharged upon the acceptance of his verdict by the court.'" (*People* v. *Lee Yune Chong, supra*, 94 Cal. at p. 385; cf. *People* v. *Hughes* (1959) 171 Cal.App.2d 362, 366-370 [340 P.2d 679].)

In the case at bar, the verdict given was certainly "such as the court may receive" under the terms of Penal Code section 1164. It was complete in every way, and signified appellant's guilt of the crime with which he was charged. Moreover, it was read in open court, and the jurors, both collectively and individually, acknowledged that it was their verdict. It was properly recorded, and appellant's right to have it read as recorded was waived by his attorney. As such, it was "complete," within the meaning of section 1164, and the jury thereafter was properly discharged from the case. Once the verdict was complete, under the *Grider* holding, the functions of the jury in relation to that verdict ceased, and the court no longer had any power over the jury.

Appellant, however, argues that the discharge of the jury was not effective as long as the jurors remained in the jury box. In support of this contention he cites the cases of *People* v. *Powell* (1950) 99 Cal.App.2d 178 [221 P.2d 117], and *People* v. *Ham* (1970) 7 Cal.App.3d 768 [86 Cal.Rptr. 906], overruled on other grounds in *People* v. *Compton* (1971) 6 Cal.3d 55, 60 [98 Cal.Rptr. 217, 490 P.2d 537]. *Powell* and *Ham* are distinguishable from the instant case. In each of those decisions the trial judge discharged the jury in the mistaken belief that it could not reach a verdict on any of the counts with which the defendant in question had been charged. In *Powell*, the jury had in fact reached a verdict on one of the counts, while in *Ham*, the jury had simply not yet deliberated on two of the three counts before it. In neither of these cases was there, when the jury was discharged, a complete verdict, one that had been received and read by the clerk, acknowledged by the jury, and recorded. In the case at bar, on the other hand, discharge of the jury was only ordered after the verdict was complete. The discharge was therefore effective.

To complete our analysis we must consider whether the juror's declarations can be considered as an attempt to impeach the verdict.

The evidentiary standards applicable to the impeachment of a jury verdict are contained in Evidence Code section 1150, subdivision (a), which provides: "Upon an inquiry as to the validity of a verdict, any otherwise admissible evidence may be received as to statements made, or conduct, conditions, or events occurring, either within or without the jury room, of such a character as is likely to have influenced the verdict improperly. No evidence is admissible to show the effect of such statement, conduct, condition or event upon a juror either in influencing him to assent to or dissent from the verdict or concerning the mental processes by which it was determined."[2] As the California Supreme Court explained in *People* v. *Hutchinson* (1969) 71 Cal.2d 342 [78 Cal.Rptr. 196, 455 P.2d 132], the only improper influences that may be proved under section 1150 to impeach a verdict are those open to sight, hearing, and the other senses and thus subject to corroboration. (*People* v. *Hutchinson, supra*, 71 Cal.2d at p. 350.)

Of the cases that have applied section 1150 to evidence given by jurors, *People* v. *Stevenson* (1970) 4 Cal.App.3d 443 [84 Cal.Rptr. 349], is particularly enlightening. The appellant in *Stevenson* had been convicted on jury verdict of first degree burglary and assault by means of force likely to produce great bodily injury. He appealed from the judgment of conviction, contending it should be reversed because the affidavits of two of the jurors demonstrated that the verdict had been improperly reached. One of the jurors alleged in his affidavit: "'It was my understanding that we had to come back with a unanimous verdict one way or the other. Since I was one of the few who were for acquittal, I felt that it was useless to persist in my convictions and, therefore, voted for a guilty verdict. Had I known that my continuing to persist in my convictions for Mr. Stevenson's innocence would have resulted in a hung-jury and therefore no guilty verdict, I would not have voted for a guilty verdict.'" (*People* v. *Stevenson, supra*, 4 Cal.App.3d at p. 444.) The affidavit of the other juror was to a similar effect. Citing section 1150, subdivision (a), and *People* v. *Hutchinson*, the *Stevenson* court

---

[2]Evidence Code section 1150, subdivision (b) reads: "Nothing in this code affects the law relating to the competence of a juror to give evidence to impeach or support a verdict." Pursuant to this provision, the standards established in subdivision (a) of section 1150 were originally inapplicable to the testimony or affidavits of jurors themselves. Under the law as it existed when section 1150 was enacted, a juror was incompetent to give evidence as to matters that might impeach his or her verdict. (See legis. committee com., Deering's Ann. Evid. Code, § 1150, pp. 15-16, West's Ann. Evid. Code, § 1150, pp. 21-22.) Subsequently, in the case of *People* v. *Hutchinson, supra*, 71 Cal.2d 342, the California Supreme Court held that "jurors are competent witnesses to prove objective facts to impeach a verdict under section 1150." (*Id.*, at p. 351.)

concluded that "the evidence supplied by the jurors' affidavits was inadmissible because it showed only the mental processes of the respective jurors, and the subjective considerations which influenced their verdicts." (*People* v. *Stevenson, supra,* 4 Cal.App.3d at p. 445; cf. *People* v. *Hall* (1980) 108 Cal.App.3d 373 [166 Cal.Rptr. 578]; *People* v. *Flores* (1979) 92 Cal.App.3d 461 [154 Cal.Rptr. 851].)

■ In the instant case, Mrs. DuGais stated that she believed appellant to be not guilty but only voted guilty because the rest of the jurors did so. Her statement was remarkably similar to those of the *Stevenson* jurors, and like those statements, hers was demonstrative only of her mental processes and the subjective considerations which influenced her verdict. Such statements are inadmissible to impeach a verdict. Appellant attempts to distinguish *Stevenson* on the ground that in that case the jurors' affidavits were obtained and presented to the court long after the jury had been discharged and dispersed. However, in view of our holding that the verdict was complete before Mrs. DuGais' renunciation, it is irrelevant whether her statements were offered either two minutes or two weeks thereafter.

It is imperative for the guidance of the trial court that the point at which a verdict becomes complete and the jury's function with respect to the case ceases be clearly defined.

The judgment is affirmed.

Kingsley, Acting P. J., and McClosky, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied February 17, 1982. Bird, C. J., and Broussard, J., were of the opinion that the petition should be granted.