[No. B001907. Second Dist., Div. Seven. Jan. 14, 1985.]

THE PEOPLE, Plaintiff and Respondent, v.
RAYMOND GONZALEZ HERNANDEZ, Defendant and Appellant.

COUNSEL

Frank O. Bell, State Public Defender, under appointment by the Court of Appeal, and Monica Knox, Deputy State Public Defender, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, S. Clark Moore, Assistant Attorney General, and Norman H. Sokolow, Deputy Attorney General, for Plaintiff and Respondent.

## OPINION

**JOHNSON, J.**—This is an appeal of a conviction for attempted rape under Penal Code sections 261 and 264 and assault with intent to commit rape under Penal Code section 220. Two central issues are presented. First, did the trial court abuse its discretion in denying the appellant's motion to represent himself, a motion made immediately before the commencement of the trial. Second, did the trial court err when it allowed the jury to reconsider its verdict on one of two counts after it returned to consider the verdict on the other. Since we find no error was committed by the trial court, we affirm.

### I. FACTS AND PROCEEDINGS BELOW

Because the issues raised on appeal concern the conduct of the trial itself, a detailed discussion of the facts surrounding the attempted rape is unnecessary.

On the evening of February 20, 1983, the appellant went to the home of his estranged wife. After being there for about an hour and a half, he left and went next door to the apartment of Laura Carletello. The appellant knocked on her door. Although Ms. Carletello tried to keep the appellant out after she opened the door, he forced his way in. He proceeded to attempt to rape her. Mrs. Hernandez heard the screams of Ms. Carletello and called her parents, who called the police. The police arrived while the appellant was still in Ms. Carletello's apartment and took the appellant into custody.

The appellant was charged by information with attempted rape and assault with intent to commit rape.

On the day the trial was scheduled to begin, the appellant made a motion to represent himself.[1] The trial court, from the outset, did not want to entertain such a motion. The court refused to listen to appellant's reasons underlying the motion and did not inquire into the cause for its lateness. The court simply stated it would allow the appellant to proceed in propria persona only if he could do so without a continuance. Appellant said he was not ready for trial. When the appellant attempted to describe the reasons for

---

[1]This motion was heard before the judge sitting in the master calendar department. He did not subsequently preside over the trial itself but assigned the case to another judge.

his motion, the trial court addressed itself to another matter. Appellant's motion was denied.

At the conclusion of the trial, the jury was instructed with respect to the counts charged in the information. In addition, the jury received instructions on simple assault, a lesser included offense of assault with intent to commit rape, count II of the charge.

After deliberating for several hours, the jury returned to the courtroom and the foreman informed the court that the jury had reached a verdict on count II but they were unable to arrive at a verdict on count I. The court inquired whether further deliberations would enable the jury to break the deadlock. After some discussion, the foreman decided further instructions might be helpful. The court also inquired whether other jurors felt this way. Other jurors so agreed. The jury was dismissed until the next morning. The trial court decided to seal the verdict on count II while the jury deliberated further on count I. The verdict had neither been read to the jury nor was it recorded in the minutes of the court.

The next morning, the jury asked the court whether they could change their decision on count II. The court, over the objection of appellant, decided to allow the reconsideration. At this time neither the People's attorney nor the defense attorney knew what the verdict was, although the court was so aware.

Approximately two hours later, the jury returned from their deliberations. They found the appellant guilty of both counts as charged. After the reading, acknowledgment, and recording of the verdict, the trial court informed the attorneys at side bench that the jury, in the sealed verdict, had found the appellant only guilty of simple assault. The trial court, after further discussion with counsel, decided to question the jury concerning their original count II verdict.

The foreman informed the court that the jury had unanimously found the appellant guilty of simple assault on the first ballot yet they were hung up on everything else. Thus from the outset of their deliberations, they had considered three separate charges, the two counts of the information and the lesser included offense of simple assault. After this questioning, the trial court dismissed the jury.

The appellant filed a timely notice of appeal. He challenges the trial court's denial of his motion for self-representation and the trial court's decision to allow the jury to reconsider their verdict on count II.

## II. ▇▇ THE TRIAL COURT DID NOT ABUSE ITS DISCRETION IN DENYING THE APPELLANT'S MOTION FOR SELF-REPRESENTATION.

▇▇ A criminal defendant has a right under the Sixth and Fourteenth Amendments to represent himself at trial. (*Faretta* v. *California* (1975) 422 U.S. 806, 807 [45 L.Ed.2d 562, 566, 95 S.Ct. 2525].) The defendant's right is absolute and unconditional if his motion is timely and if he is deemed competent to waive counsel. (*Ferrel* v. *Superior Court* (1978) 20 Cal.3d 888, 891 [144 Cal.Rptr. 610, 576 P.2d 93].) An untimely motion is addressed to the sound discretion of the court. (*People* v. *Windham* (1977) 19 Cal.3d 121, 128 [137 Cal.Rptr. 8, 560 P.2d 1187], cert. den. (1977) 434 U.S. 848 [54 L.Ed.2d 116, 98 S.Ct. 157].)[2]

The court in *Windham* established the procedure to be followed in assessing an untimely motion: "When such a . . . request for self-representation is presented the trial court *shall inquire sua sponte* into the specific factors underlying the request *thereby ensuring a meaningful record* in the event that appellate review is later required. Among other factors to be considered by the court in assessing such request made after the commencement of trial are the quality of counsel's representation of the defendant, the defendant's prior proclivity to substitute counsel, the reasons for the request, the length and stage of the proceedings, and the disruption or delay which might reasonably be expected to follow the granting of such a motion. *Having established a record based on such relevant considerations,* the court should exercise its discretion and rule on the defendant's request." (Italics added.) (*People* v. *Windham, supra,* 19 Cal.3d at pp. 128-129.) The court did not require that a trial court state the reasons for denying the motion for self-representation. As the court stated, ". . . we impose a requirement that trial courts confronted with nonconstitutionally based motions for self-representation inquire *sua sponte* into the reasons behind the request. Thus, . . . there should be a sufficient record on appeal in such cases in order to sufficiently evaluate alleged abuses of discretion when motions for self-representation are denied." (*People* v. *Windham, supra,* 19 Cal.3d at p. 129, fn. 6; see *People* v. *Joseph* (1983) 34 Cal.3d 936, 944, fn. 2 [196 Cal.Rptr. 339, 671 P.2d 843]; *People* v. *Morgan* (1980) 101 Cal.App.3d 523, 529 [161 Cal.Rptr. 664].)

▇▇ In the case before us, the trial court made no attempt to inquire into appellant's reasons for making his motion. The record indicates just prior to the commencement of trial, appellant's counsel informed the court

---

[2]The *Windham* court held that a motion is untimely unless it is made a reasonable time prior to the commencement of trial. (*People* v. *Windham, supra,* 19 Cal.3d at p. 128.) See further discussion *infra.*

his client was requesting pro. per. status. Assuming arguendo that appellant's motion was untimely, the court was required to follow the procedure mandated in *Windham*. The trial court, however, made it clear from the outset it was not predisposed to listening to the reasons for the appellant's request.[3] When, at a later point, appellant attempted to tell the court the reasons for his request, the court abruptly cut him off and told appellant his motion would only be granted if he was prepared to begin the trial immediately. The appellant informed the court he would require a continuance. Soon thereafter, the court denied the appellant's motion.[4] The trial court, however, granted counsel's subsequent request to continue trial for five days.

Thus it is apparent from the record the trial court failed to conduct the type of inquiry mandated by *Windham*. Such a failure made it impossible for this court to adequately review the appropriateness of the trial court's denial of the appellant's motion. We were in essence forced to speculate about the factors underlying this request. This was the very situation the *Windham* court sought to avoid.[5]

This same problem was faced in *People* v. *Herrera* (1980) 104 Cal.App.3d 167 [163 Cal.Rptr. 435]. In that case, the defendant made a motion for self-representation on the morning of his trial. The trial court denied this motion and the defendant was subsequently convicted. His appeal was based, in part, on the denial of his motion. The appellate court reversed the defendant's conviction. An important factor in this decision was the trial court's total failure to comply with the mandate of the *Windham* court. As the court stated, "Without such a record we can only speculate that a consideration of these [the *Windham*] factors may well have demonstrated to the trial judge reasons to exercise his discretion to allow Herrera to proceed in propria persona." (*People* v. *Herrera, supra,* 104 Cal.App.3d at p. 174.)

An even more essential factor in the *Herrera* court's decision to reverse was its finding that the defendant's motion was not untimely even though it was made the morning of the defendant's trial.[6] The court found, based on

---

[3]When counsel first indicated appellant sought to go pro. per., the court responded, "Let's not finish the day that way."

[4]We recognize a trial court may deny a request for self-representation made on the eve of trial because it would require a continuance. (*People* v. *Hill* (1983) 148 Cal.App.3d 744, 757 [196 Cal.Rptr. 382]; *People* v. *Fulton* (1979) 92 Cal.App.3d 972, 976 [155 Cal.Rptr. 327].) But simply because this may be a legitimate ground for denial of the motion does not entitle a trial court to completely disregard the mandate established in *People* v. *Windham, supra,* 19 Cal.3d 121.

[5]As will be discussed in more detail *infra,* we subsequently appointed a referee to conduct the type of hearing mandated in *Windham* so as to establish the necessary record for review.

[6]The erroneous denial of a timely *Faretta* motion requires reversal per se. (*People* v. *Joseph, supra,* 34 Cal.3d at pp. 945-948.)

the circumstances, there was reasonable cause for the lateness of the defendant's motion. In reaching this conclusion, the court stated, "[t]o hold a motion for self-representation made by a defendant at his earliest opportunity is untimely when that 'earliest opportunity' appears to be shortly before trial, would effectively thwart defendant's constitutional right to proceed in propria persona as established in *Faretta* v. *California* (cites omitted)." (*People* v. *Herrera, supra,* 104 Cal.App.3d at p. 174.) Although *Herrera* is arguably distinguishable on this point, in the case before us, the failure of the trial court to comply with the *Windham* mandate also thwarted our very ability to assess the timeliness of the appellant's motion since the record was barren as to the reason(s) for the lateness of the appellant's request. The appellant was simply not given an opportunity to provide this information.[7]

The failure of a trial court to give a defendant the opportunity to discuss the reasons for seeking a change in representation has also been examined in another context. In *People* v. *Marsden* (1970) 2 Cal.3d 118 [84 Cal.Rptr. 156, 465 P.2d 44], the appellant challenged the trial court's denial of his motion to substitute counsel without giving him the opportunity to state the reasons for his request. The court reversed the appellant's conviction. In doing so, the court stated that although it was within the trial court's discretion whether to grant the motion, a trial court could not intelligently exercise this discretion without being aware of the reasons which prompted the defendant's request. (*People* v. *Marsden, supra,* 2 Cal.3d at p. 123.) As the court stated: "[A] judge who denies a motion for substitution of attorneys solely on the basis of his courtroom observations, despite a defendant's offer to relate specific instances of misconduct, abuses the exercise of his discretion to determine the competency of the attorney. A judicial decision made without giving a party an opportunity to present argument or evidence in support of his contention is lacking in all the attributes of judicial determination.' " (*People·*v. *Marsden, supra,* 2 Cal.3d at p. 124.)

The *Marsden* court concluded an error of this nature is prejudicial per se. (But see *People* v. *Minor* (1980) 104 Cal.App.3d 194, 199-200 [163 Cal.Rptr. 501].) The trial court's failure to conduct the necessary inquiry

---

[7]We recognize other cases have found motions to be untimely when made at approximately the same point as in the case before us. (See *People* v. *Hall* (1978) 87 Cal.App.3d 125, 131 [150 Cal.Rptr. 628] [motion made immediately prior to jury selection]; *People* v. *Morgan, supra,* 101 Cal.App.3d 523, 531 [motion made immediately prior to jury selection].) The Supreme Court in *Windham* stated, however, it was not affixing a set moment in time that a *Faretta* motion had to be made in order to be deemed timely. Thus although, as the court stated, a defendant who makes a motion right before trial would have to demonstrate reasonable cause for the lateness of his motion, his motion is not unequivocally untimely simply due to the comparative lateness of the request. (*People* v. *Windham, supra,* 19 Cal.3d at p. 128, fn. 5.) *People* v. *Herrera, supra,* 104 Cal.App.3d 167 is a case in point.

results in a barren record making meaningful appellate review impossible. (*People* v. *Marsden, supra,* 2 Cal.3d at p. 126; see *People* v. *Hidalgo* (1978) 22 Cal.3d 826 [150 Cal.Rptr. 788, 587 P.2d 230]; *People* v. *Hill, supra,* 148 Cal.App.3d at p. 755.)

Several courts have recognized the *Marsden* principles are equally applicable when a request for self-representation has been made. In *People* v. *Morgan, supra,* 101 Cal.App.3d 523, the defendant challenged the trial court's denial of his motion for self-representation. The court rejected this challenge, in part, because "[t]he trial judge gave appellant an opportunity to state the reasons why he wanted the deputy public defender relieved; therefore no *Marsden* error occurred." (*People* v. *Morgan, supra,* 101 Cal.App.3d at p. 529; see *People* v. *Wright* (1977) 72 Cal.App.3d 328, 340 [140 Cal.Rptr. 98] [the principles of *Marsden* are applicable when a trial court rules against a defendant who claims inadequate representation by his attorney and seeks to represent himself.].)

Based on the foregoing analysis, we found the trial court erred in failing to conduct an inquiry into the reasons underlying the appellant's request for self-representation. Such failure prevented the trial court itself from making a reasoned decision with respect to the timeliness and the appropriateness of the motion. It also prevented this court from making a meaningful review of the trial court decision.

In order to establish an adequate record for review, we appointed a referee, the Honorable Charles S. Litwin, Judge of the Superior Court of Los Angeles County, to conduct an inquiry into the factors underlying the appellant's request for self-representation as mandated by *Windham.* After such an inquiry was conducted, the referee submitted his findings to this court accompanied with a transcript of the proceedings.

The referee found the appellant had never requested the trial court allow him to represent himself prior to June 22, 1983, the day the case was ready for trial. He also found the appellant had not informed his attorney of any desire to represent himself prior to June 20, 1983. As established at the hearing, the appellant sought propria persona status during that period because it was at that time his attorney informed him of the results of the investigation the appellant had asked his attorney to conduct and the appellant was very displeased with the results. He was also unhappy with the plea bargain that his attorney discussed with him at that time.[8] The referee further found the appellant had shown no prior proclivity to substitute coun-

---

[8]At this hearing, the appellant was largely unable to place events in a consistent time sequence. His trial attorney's testimony provided the necessary clarification.

sel. In addition, he found the appellant's trial counsel to be a capable, competent, and experienced lawyer. The quality of representation he provided the appellant was good. The transcript of the proceeding conducted by the referee amply supports these findings. Given these findings, we can now review the trial court's decision.

■ We must first assess whether the appellant's motion was a timely one. When a motion for self-representation is made right before trial, the defendant must show reasonable cause for the lateness of the request. (*People* v. *Windham, supra,* 19 Cal.3d at p. 128, fn. 5.) From the above facts, we conclude no such reasonable cause was established. Although the appellant's central disagreements with his attorney which led him to seek propria persona status arguably did not arise until June 1983 when he learned of the investigation results and the plea bargain, we do not believe this alone provides the necessary reasonable grounds. Implicit in the requirement the defendant show reasonable cause for the lateness of the request is that the event(s) which brought about the defendant's current request for propria persona status must not only be recent in origin but must also provide a reasonable basis for his dissatisfaction with his attorney's representation. A defendant cannot latch onto any event that happens to occur in close proximity to trial and attempt to use that event to justify the late request. We feel this has happened in the case at bar. The appellant's attorney testified at the hearing conducted by the referee he made a concerted effort to contact and interview the witnesses suggested by the appellant. Although the investigation did not prove successful, the attorney was in no way at fault for this lack of success. Thus this was not a case where no effort was made on the part of the attorney to investigate a client's case. The attorney can also not be faulted for trying to work out a deal for his client. There was no pressure upon the appellant to accept such a deal. The attorney simply testified it was his policy to try to get the best disposition for his client and ultimately it was his client's decision whether to accept the disposition or go to trial. We conclude the appellant did not establish reasonable grounds for the lateness of his request and therefore it was untimely. Given that the appellant's request was untimely, we must determine whether the trial court abused its discretion in denying the appellant's motion for self-representation. We conclude it did not.

■ An examination of the factors to be considered by a trial court in assessing a defendant's motion for self-representation demonstrates no abuse of discretion occurred in the case at bar. When the appellant made his motion, he informed the trial court he would require some time to prepare his case. At the hearing conducted by the referee, the appellant testified he would have required at least six months to prepare his case. Thus, granting the appellant's motion would have entailed substantial delay. As dis-

cussed earlier, the mere fact the granting of such a motion would require a continuance has been held to provide sufficient grounds for the denial of an *untimely* motion for self-representation. (See *ante,* fn. 4.) In addition to the lengthy continuance, the appellant's attorney was found to be experienced and competent and the quality of his representation of the appellant up to the time of the appellant's motion was found to be good. Furthermore, as discussed previously, the appellant's central reasons for his request were hardly persuasive.

Based on these factors, we conclude that had the trial court conducted a proper *Windham* hearing ample evidence existed to support the court's decision to deny appellant's motion for self-representation. Indeed it appears most unlikely this or any other trial judge would have reached any other decision on this set of facts. Accordingly, we hold the error in failing to conduct the hearing was not fatal to this conviction. At the same time we would not want to leave the impression with trial courts that it is unnecessary to comply with *Windham* at the trial stage because the appellate courts routinely will conduct their own inquiry if the issue is raised on appeal. A trial court's duty is to ascertain and weigh all the relevant factors at the time the defendant requests self-representation. It would be a rare situation where this court would repeat the reference procedure used in our disposition of this appeal.

III. The Trial Court Did Not Err in Allowing the Jury to Reconsider Their Verdict on Count II.

Appellant contends once the jury returned with a verdict on count II, the trial court was required to accept and record it. The appellant thus argues that the court had no authority to allow the jury to reconsider the verdict on that count and as a result their subsequent reconsideration of that count violated appellant's protection against double jeopardy. The appellant relies in part on Penal Code section 1164.

Penal Code section 1164 provides as follows: "When the verdict given is such as the court may receive, the clerk, or if there is no clerk, the judge or justice, must record it in full upon the minutes, and if requested by any party must read it to the jury, and inquire of them whether it is their verdict. If any juror disagrees, the fact must be entered upon the minutes and the jury again sent out; but if no disagreement is expressed, the verdict is complete, and the jury must be discharged from the case." Although we could find no cases involving a similar factual context, a number of cases have examined Penal Code section 1164 in addressing what is also a crucial issue in the case before us, at what point can a jury no longer reconsider a verdict.

In *People* v. *Peavey* (1981) 126 Cal.App.3d 44 [178 Cal.Rptr. 520] the appellant alleged the verdict reached in his case had not been unanimous and therefore he was improperly convicted. In that case, the jury had returned a guilty verdict. Each juror collectively and then individually affirmed the verdict. The court thereupon directed the clerk to record the verdict and excused the jury. Before any of the jurors left the box, one of the jurors decided she wanted to change her vote. The trial court, after a recess, decided it no longer had jurisdiction to conduct further proceedings.

The appellate court, after examining Penal Code section 1164 and applicable case law, affirmed the decision. The court held once a jury had been discharged and a "complete verdict" had been rendered, one that had been received and read by the clerk, acknowledged by the jury, and recorded, the trial court has no jurisdiction to reconvene the jury. (*People* v. *Peavey, supra,* 126 Cal.App.3d at p. 46; see *People* v. *Thornton* (1984) 155 Cal.App.3d 845, 855 [202 Cal.Rptr. 448] [at the time of the initial jury discharge, the not guilty verdict was complete and recorded and therefore the trial court did not have jurisdiction to reconvene the jury.].)

■ Penal Code section 1164 does not, however, prohibit jury reconsideration of the verdict prior to the rendering of a "complete verdict." In *Chipman* v. *Superior Court* (1982) 131 Cal.App.3d 263 [182 Cal.Rptr. 123], the jury, after deliberations, had returned to court with a verdict of guilty. The jurors collectively acknowledged the verdict as theirs. However, when individually polled, one of the jurors changed her mind. The juror stated although the returned verdict represented her verdict in the jury room, her present verdict was now not guilty. The court nevertheless accepted the guilty verdict as being unanimous.

The appellate court reversed. In so doing, the court stated: "To protect that constitutional right [of a unanimous verdict] it is provided by statute that on the polling of a jury 'if anyone answer in the negative, the jury must be sent out for further deliberation.' (Pen. Code, § 1163.) Only if no disagreement is expressed on polling is the verdict complete. (Pen. Code, § 1164.) *Thus, any juror is empowered to declare, up to the last moment, that he dissents from the verdict.* (Citation omitted.) (*Chipman* v. *Superior Court, supra,* 131 Cal.App.3d at p. 266.)

There have been two cases which have even upheld the reconvening of jurors after discharge to alter their decision, although in both cases, such reconvening occurred before the jurors left the jury box. In *People* v. *Powell* (1950) 99 Cal.App.2d 178 [221 P.2d 117], the trial court discharged the jury after they informed the court that they were unable to reach a verdict with respect to one of the defendants. The court thereafter discovered the

jury had indeed reached a verdict with respect to one of the counts against the defendant, just not on both counts. The trial court reconvened the jury and allowed them to enter their verdict on that one count.

The appellate court affirmed the decision. The court found it significant the error was discovered before the jury had left the jury box. (*People* v. *Powell, supra,* 99 Cal.App.2d at pp. 181-182; see *People* v. *Ham* (1970) 7 Cal.App.3d 768, 776 [86 Cal.Rptr. 906], overruled on other grounds in *People* v. *Compton* (1971) 6 Cal.3d 55 [98 Cal.Rptr. 217, 490 P.2d 537] [trial court was obligated to reconvene a previously discharged jury while they were still in the jury box when the court discovered the jury had only deliberated on one of the four counts]; compare *People* v. *Grider* (1966) 246 Cal.App.2d 149, 154 [54 Cal.Rptr. 497].) In neither of the two cases which allowed reconvening after discharge had a "complete" verdict been rendered per section 1164 and thus the reconvening of the jury did not violate the express provisions of that section.

An important aspect in many of the above cases is the concern the courts have with the loss of court control over discharged jurors. Once the court has discharged the jurors and they have left the jury box, they are no longer subject to court restraints. As the *Thornton* court stated: "[The] discharge . . . results in sending the jurors back to the outside world freed of all the admonitions that previously guarded their judgment from improper influences. Once freed, the jurors can properly discuss the case with the district attorney and the People's witnesses, they can read about it in the media and they can entertain 'facts' or opinions about it from any source." (*People* v. *Thornton, supra,* 155 Cal.App.3d at p. 856.)

■■■ In the case before us, although the trial court indeed received the verdict from the jury on count II subject to further deliberations on count I, he merely sealed the verdict. It was not read to the jury, acknowledged by them to be their verdict, or recorded. The jury had also not been discharged. Thus the jury's verdict on count II cannot be said to be a "complete verdict" foreclosing any further jury deliberations on that count. Furthermore, although the jury adjourned for the day after the judge sealed their verdict, the jury was admonished not to discuss the matter among themselves or with anyone else. Thus this was not a case in which outside influences might have impinged on the integrity of the jury process.

The appellant contends nevertheless, when the jury initially returned with their verdict, the trial court was obligated at that time to make the returned

verdict a "complete verdict" thus ending any possible future jury deliberations on that count. As explained below, we disagree.

Penal Code section 1160 states in relevant part: "Where two or more offenses are charged in any accusatory pleading, if the jury cannot agree upon a verdict as to all of them, they may render a verdict as to the charge or charges upon which they do agree, and the charges on which they do not agree may be tried again." ■ A trial court has several options available when a jury reports it is deadlocked on one or more counts while it has arrived at a verdict on another count. One option is for the trial court to receive, to acknowledge, and to record each verdict as the jury arrives at it, sending the jury back to deliberate on the yet unresolved counts. Such a procedure is consistent with Penal Code section 1164. (*People* v. *Rigney* (1961) 55 Cal.2d 236, 246 [10 Cal.Rptr. 625, 359 P.2d 23, 98 A.L.R.2d 186].) This is what appellant argues the trial court should have done in the case before us. But another acceptable option available to the trial court is not to receive any verdicts on decided counts from the jury until they have finished deliberations on all other counts. (*People* v. *Finch* (1963) 213 Cal.App.2d 752, 762 [29 Cal.Rptr. 420].) Under the *Finch* approach, a jury would thus be able to reconsider verdicts that they had already agreed upon while at the some time further deliberating on the counts that remained undecided, the very result that occurred in the case before us. Furthermore, there is nothing improper in this approach since as discussed above, jury reconsideration of their verdict up until the last moment is quite accepted. Thus although the trial court in the case at bar did not follow the *Finch* approach, the net effect was the same.[9]

■ Finally, the appellant also contends the trial court violated Penal Code section 1161 in allowing the jury reconsideration. We disagree. Penal Code section 1161 provides in relevant part, "When there is a verdict of conviction, in which it appears to the Court that the jury have mistaken the law, the Court may explain the reason for that opinion and direct the jury to reconsider their verdict, . . . but when there is a verdict of acquittal, *the Court cannot require* the jury to reconsider it . . . ." (Italics added.) The concern of this section is with a trial court's initiation of jury reconsideration of their verdict on its own accord. (See *People* v. *Crawford* (1953) 115 Cal.App.2d 838, 842 [252 P.2d 963].) In the case before us, the reconsideration of the verdict was clearly initiated by the jury itself. Thus this is

---

[9]Although we are not persuaded that the actions of the trial court were in error, in the future, trial courts should either adopt the approach used in *People* v. *Finch, supra*, 213 Cal.App. 752, 762 or that used in *People* v. *Rigney, supra*, 55 Cal.2d 236, 246. Either of these approaches is certainly more in keeping with the specific language of Penal Code section 1164.

not the case, as the appellant suggests, of a trial court refusing to accept a particular verdict and ordering the jury to reconsider their decision.[10]

For the foregoing reasons we hold that the trial court did not err in allowing the jury to reconsider their original verdict.

## DISPOSITION

The judgment of conviction is affirmed.[11]

Lillie, P. J., and Thompson, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied March 14, 1985. Mosk, J., was of the opinion that the petition should be granted.

---

[10]At oral argument, the appellant placed great reliance on *Stone* v. *Superior Court* (1982) 31 Cal.3d 503 [183 Cal.Rptr. 647, 646 P.2d 809] and *People* v. *Romero* (1982) 31 Cal.3d 685 [183 Cal.Rptr. 663, 646 P.2d 824] to support his argument reconsideration was inappropriate. But neither of these cases provides the support the appellant contends. In *Stone*, the defendant was on trial for murder. The jury was instructed on first degree murder and all the lesser included offenses. The jury after deliberation informed the court it unanimously agreed the defendant was not guilty of murder but they were hung on the lesser offenses. The trial court subsequently declared a mistrial and refused to dismiss some or all of the charges against the defendant. The appellate court found this in error. As the court stated, ". . . the trial court is constitutionally obligated to afford the jury an opportunity to render a partial verdict of acquittal on a greater offense when the jury is deadlocked only on an uncharged lesser included offense." (*Stone* v. *Superior Court, supra,* 31 Cal.3d at p. 519.) The trial court erred because prior to discharge of the jury the court had been informed the jury stood firmly and finally in favor of acquittal of both degrees of murder. The case at bar presents no such similar factual context. Furthermore, we do not find the concept of "implied verdict," discussed in *Stone,* to be applicable in the case at bar since a "complete" verdict had not been reached with respect to the lesser included offense. In *Romero,* the defendant was charged with two counts of burglary. The jury found the defendant guilty of one of the counts. Two months after the final verdict had been entered, the foreman and five other jurors submitted affidavits stating that although the jury had unanimously agreed to convict the defendant on count two and acquit on count one their verdicts on each counts were inadvertently reversed when they presented them to the judge. The appellate court refused to set aside the verdict. This case is easily distinguishable from the case at bar since in that case a complete and final verdict had been rendered by the jury.

[11]In its minute order of September 16, 1983, the trial court ordered the sentence on count I to run concurrently with the count II sentence. However, the court ordered the sentence on count I stayed pending service of the sentence on count II and at the completion of service of the sentence on the latter count, the stay would become permanent. The abstract of judgment, however, failed to indicate the appellant's term on count I was stayed. The clerk of the court is hereby ordered to correct the abstract of judgment so it is in accordance with the minute order of September 16, 1983.