Filed 4/4/23

**CERTIFIED FOR PARTIAL PUBLICATION***


IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br>v.<br>MERLIN SYLVESTER JONES,<br>    Defendant and Appellant. | A163558<br><br>(Solano County Super Ct.<br>No. VCR231658) |

In the first part of a bifurcated trial, a jury found appellant guilty of first degree murder (Pen. Code,[1] § 187, subd. (a)) and being a felon in possession of a firearm (§ 29800, subd. (a)(1)), finding true the allegation that he had personally used a firearm causing death (§ 12022.53, subd. (d)). In the second part, the same jurors found that he had been convicted of a prior serious felony (§ 1170.12, subd. (a)). In this appeal, he argues that the murder conviction should be reversed for the trial court's alleged errors in instructing the jury and failing to declare a mistrial. In the alternative, he urges us to strike the prior serious felony finding because the trial court erroneously discharged and lost control of the jurors after the first part of the

---

* Pursuant to California Rules of Court, rules 8.1105(b) and 8.1110, this opinion is certified for publication with the exception of parts A, C, and D of the Discussion.

[1] All subsequent references to statute are to the Penal Code, unless otherwise noted.

trial, thereby divesting them of the power to render a verdict as to the second. We reject appellant's arguments concerning his murder conviction, but we find merit in his attack on the second part of his bifurcated trial. We therefore reverse the judgment as to the prior serious felony and affirm it in all other respects.

## I. BACKGROUND

### A. Factual Background

Robert McGee met appellant while incarcerated in the Solano County Jail. When McGee's friend, Maleek Mitchell, wanted a gun, McGee suggested buying one from appellant. McGee then spoke to appellant, who was willing to sell Mitchell a gun for $700. Ultimately, McGee relayed appellant's phone number to Mitchell so the two could make arrangements for the sale.

After Mitchell texted appellant several times, appellant made a phone call to Mitchell that lasted four seconds. Six hours later, he made another phone call to Mitchell, this one lasting 52 seconds. A text message exchange ensued. Mitchell texted appellant: "201 Maine Street, Vallejo. See yah." This was the address of the Marina Vista Apartments where Mitchell was celebrating the birthday of friend, Mike Allen, along with another friend, Kristona Polk. Mitchell's next message to appellant asked, "[h]ow long you gone [*sic*] take?" "15 min," appellant replied.

Another of Mitchell's friends, Darius Watson, arrived at Marina Vista after the text message exchange. Soon after his arrival, he spotted Mitchell, Allen, and Polk in the parking lot. When Mitchell asked Watson for a ride to a bus stop, Watson agreed and drove Polk, Mitchell, and Allen to another parking lot near the bus stop. Appellant then texted Mitchell, "I'm outside," and a series of phone calls between the two men followed. Allen overheard the man to whom Mitchell was speaking tell Mitchell "to come by himself."

2

Tired of waiting in the parking lot, Watson was starting to drive toward the exit when a white Volvo sedan with tinted windows pulled up alongside him. The same Volvo had been circling the block near Watson's car for the previous nine minutes. Mitchell said that "that was the car" and promptly exited Watson's vehicle, engaging in conversation on the driver's side of the Volvo before getting into the driver's side backseat. The Volvo drove away toward the boat dock, and about a minute later, Mitchell rolled out of the car onto the pavement.

A witness who heard a gunshot and saw Mitchell lying on the ground called 911. Mitchell was then transported to the hospital, where he died that night. Because no wallet or identification was found near Mitchell when he was lying in the street, he was ultimately identified through the DMV database.

## B. Procedural Background

The Solano County District Attorney charged appellant by information with two counts: (1) first degree murder (§ 187, subd. (a)), with an allegation of personal use of a firearm causing death (§ 12022.53, subd. (d)); and (2) being a felon in possession of a firearm (§ 29800, subd. (a)(1)). The information further alleged that in December of 2009, appellant had suffered a conviction for second degree robbery (§ 212.5, subd. (c)), a prior serious felony for the purposes of sentencing under section 1170.12, subdivision (a).

The first part of the bifurcated trial concerned Counts 1 through 2 and the firearm allegation, leaving the matter of appellant's prior serious felony conviction for the second part. During the presentation of evidence, the People called Santa Clara Police Lieutenant Nicholas Richards, who had arrested appellant in connection with a separate crime committed in Santa Clara, and had then seized evidence relevant to the incident underlying the

3

Solano County murder charge. In the course of his testimony, Richards discussed a "similar" shooting in Vallejo involving appellant, notwithstanding the trial court's ruling *in limine* that Richards was not to testify to "[h]ow and why he developed" his lead concerning the Vallejo incident. The trial court sustained defense counsel's objections to that testimony and had it stricken from the record, but declined to declare a mistrial.

The trial court instructed the jury with the Judicial Council's Criminal Jury Instructions (CALCRIM) Nos. 224 and 370, inter alia. The former explains the relationship between the juror's reliance on circumstantial evidence and the prosecution's burden of proof beyond a reasonable doubt, while the latter notes that the People have no burden "to prove that the defendant had a motive to commit any of the crimes charged." Having been so instructed, the jury found appellant guilty of first degree murder and found true the attendant personal-use-of-a-firearm allegation, as well as convicting appellant of being a felon in possession of a firearm.

On March 17, 2021, during proceedings that resumed at 10:10 a.m., the trial court instructed the clerk to record the verdicts and discharged the jury. In so doing, the court expressly released the jurors from their obligation not to discuss the case with anyone else and informed them that they were "all excused from jury duty." There followed a pause in the proceedings, after which the prosecutor informed the court that the matter of the prior serious felony conviction remained to be tried. Upon hearing this, the trial court asked the bailiff to "tell the jurors to wait" and "[t]ell them they're not excused yet." Several more pauses intervened before proceedings resumed at 2:05 p.m. and the trial court welcomed the jurors back.

At the conclusion of the second part of appellant's bifurcated trial, the jury found that he had been convicted of second degree robbery

4

(§ 212.5, subd. (c)) in Santa Clara County Superior Court on or about December 22, 2009.

This appeal followed.

## II.  DISCUSSION

### A.  Alleged Instructional Error as to Evidence of Motive

Appellant argues that the trial court erred by instructing the jury with both CALCRIM Nos. 224 and 370.  Specifically, he contends that "when motive is a circumstantial fact which" jurors "may, with a realistic possibility," deem a fact necessary to find the defendant guilty, employing both jury instructions erroneously "encroaches on the jury's freedom to assign the appropriate weight to be given to motive evidence, and thereby may lighten the prosecution's burden of proof."  We disagree.

"The test" for instructional error "is whether there is a reasonable likelihood that the jury understood the instruction in a manner that violated the defendant's rights."  (*People v. Andrade* (2000) 85 Cal.App.4th 579, 585.) " 'Jurors are presumed to be intelligent, capable of understanding instructions and applying them to the facts of the case.' "  (*People v. Lewis* (2001) 26 Cal.4th 334, 390.)

As relevant here, CALCRIM No. 224 reads as follows:  "Before you may rely on circumstantial evidence to conclude that a fact necessary to find the defendant guilty has been proved, you must be convinced that the People have proved each fact essential to that conclusion beyond a reasonable doubt."  CALCRIM No. 370 instructs:  "The People are not required to prove that the defendant had a motive to commit any of the crimes charged. Despite Appellant's contention that having the word "prove" in CALCRIM No. 370 would confuse the jury regarding the distinction between relevance of motive and the weight of the prosecution's burden, when read together, with

5

CALCRIM No. 224, the intelligent juror is presented with no great task of harmonization.[2]  The jury would have understood that CALCRIM No. 370 explains the relevance of motive evidence and CALCRIM No. 224 further clarifies the burden of proof as it relates to circumstantial evidence.  In essence, if a defendant's motive to commit a crime is essential to the jury's conclusion that he is guilty, then that motive must be proved beyond a reasonable doubt; however, if it is not essential to that conclusion, then it need not be proved at all.  This understanding, coupled with CALCRIM No. 220, which instructs the jury that the defendant is presumed innocent and that the People are required to prove him guilty beyond a reasonable doubt, means there is no "reasonable likelihood that the jury understood" CALCRIM No. 370 "in a manner that violated [appellant's] rights."  (*People v. Andrade*, *supra*, 85 Cal.App.4th at p. 585.)

In sum, there was no instructional error.

**B.  <u>The Effect of Discharging the Jury on the Second Part of the Bifurcated Trial</u>**

Appellant argues that because the trial court discharged and lost control of the jury after the first part of the bifurcated trial, any subsequent proceedings were "a nullity."  (*People v. Thornton* (1984) 155 Cal.App.3d 845, 856 (*Thornton*), citing *People v. Lee Yune Chong* (1892) 94 Cal. 379, 385–86 (*Chong*).)  We agree.

---

[2] For the same reason, appellant's reliance on *People v. Hillhouse* (2002) 27 Cal.4th 469, is misplaced.  In that case, the appellant argued "that motive is an element of the crimes" with which he was charged.  (*Id.* at p. 503.)  Our Supreme Court observed:  "If he were correct (as we explain, he is not)," a jury instruction telling jurors that motive was not an element of the charged crimes "would have contradicted other instructions regarding the elements of the crimes."  (*Ibid.*)  Here, there is no such contradiction.

6

"Once a 'complete' verdict has been rendered per section 1164 and the jurors discharged, the trial court has no jurisdiction to reconvene the jury regardless of whether or not the jury is still under the court's control ([*People v. Peavey* (1981) 126 Cal.App.3d 44 (*Peavey*)]).  However, if a complete verdict has not been rendered ([*People v. Powell* (1950) 99 Cal.App.2d 178 (*Powell*)], [*People v. Ham* (1970) 7 Cal.App.3d 768 (*Ham*)]) or if the verdict is otherwise irregular (*Chong*, [*People v. Grider* (1966) 246 Cal.App.2d 149 (*Grider*)]), jurisdiction to reconvene the jury depends on whether the jury has left the court's control.  If it has, there is no jurisdiction (*Chong*, *Grider*); if it hasn't, the jury may be reconvened (*Powell*, *Ham*)."  (*Thornton*, *supra*, 155 Cal.App.3d at p. 855.)

Here, both parties agree that no complete verdict had been rendered at the time the trial court discharged the jury, so our inquiry concerns "whether the jury left the court's control."  (*Ibid*.)  If it did, then the court lost jurisdiction over the jurors, and the subsequent actions of those jurors in trying appellant's prior serious felony conviction " 'were nullities.' "  (*People v. Garcia* (2012) 204 Cal.App.4th 542, 551–552, quoting *Chong*, *supra*, 94 Cal. at pp. 384–385.)

Proceedings resumed for the reading of the verdict at 10:10 a.m.  After the verdict was read and jury was polled, the trial court told jurors that they had "completed [their] jury service" and were offered "sincere thanks for [that] service."  The trial court continued:  "I've told you throughout this case, you can't talk about the case with anyone.  Well, that's over.  Now, if you want to talk about the case, you can, but by the same token, if you ever wanted to talk about it, that's your choice as well."  Finally, jurors were asked to leave behind any notes from the proceedings before the trial court concluded, "[y]ou are all excused from jury duty."

7

After a pause in the proceedings, the prosecutor noted that the prior serious felony conviction remained to be tried. The trial court replied, "Oh, yes. Thank you. I just excused my jury." Turning to the bailiff, the trial court said, "Hang on. Can you tell the jurors to wait. Tell them they can't leave yet." A second pause in the proceedings followed.

The trial court then urged the prosecutor to secure documents needed to try the prior serious felony conviction, and said, "Okay. Can we tell our jurors that we will see that there may be one more thing I need them to do, and that I need them to reassemble outside the door at 11:30." Then, the trial court made an ambiguous comment that was interrupted by defense counsel: "One second. I have someone -- they've already signed out of the -- ." Defense counsel moved for dismissal as to the prior serious felony on the grounds that the jury had been discharged. In denying that motion, the trial court noted that he had "told the jurors they were excused, and now . . . will have the unenviable task of telling them in fact they're not."

At 11:50 a.m., proceedings resumed without any indication that the jurors had returned to the courtroom or reassembled at 11:30. Another recess was taken before proceedings resumed again from 1:22 to 1:40 p.m., outside the presence of the jury. At 2:05 p.m., again outside the presence of the jury, exhibits were marked in anticipation of the second part of the bifurcated trial. Finally, the trial court ordered the jurors to be brought in. No admonition was given before proceeding to try the prior serious felony conviction. Months later, in denying appellant's motion for new trial, the trial court remarked that the jury "never even left the courthouse."

Thus, the jurors were discharged and freed of any admonition shortly after 10:10 a.m. and did not return to the courtroom until hours later, at 2:05 p.m. The trial court's contemporaneous instructions to the bailiff, along with

8

the trial court's own remarks months later, suggest that the jurors stayed within the courthouse, but the record is silent as to whether they abided by the terms of the admonition from which they had already been released. The record does not account for the jurors' conduct or specific whereabouts during their hours-long absence from the courtroom, and it is not clear whether even the trial court had such knowledge at the time. Given such a paucity of evidence, we cannot conclude that the jury remained within the court's control.

That analysis is only reinforced by comparison of the record here to the cases relied upon by respondent, in which the trial courts did not lose control. In *People v. Shaffer* (1987) 195 Cal.App.3d 939, 941 (*Shaffer*), the trial court told the jury: " 'I would like to meet with you, ladies and gentlemen, if you wish to. You are not required to because in a moment I will excuse you and I will ask you to return to the jury assembly room for further instructions there. But if you are inclined, I would like to meet with you in chambers now and the bailiff will show you the way. Thank you.' " Then, consistent with what the trial court had already indicated, "the jury did in fact meet with [the court] in chambers" before "the Court had the original jurors and alternates reconvene in the jury room to await further order of the Court." (*Ibid*.) There, "the clerk buzzed to indicate that the priors had not been attended to, and that is when the jury was reconstituted." (*Ibid*.) Thus, in *Shaffer*, the discharged jury was released to two rooms not ordinarily open to the public, not "the courthouse" at large. And in *People v. Kimbell* (2008) 168 Cal.App.4th 904, 908, "the jury had not even left the jury box."

Accordingly, we conclude that the court lost jurisdiction over the jurors before they were ostensibly reconvened, thus rendering their verdict as to appellant's prior serious felony conviction a nullity.

9

**C. Alleged Error in the Trial Court's Denial of Appellant's Motion for a New Trial**

Appellant argues that the trial court erred in denying his purported request for mistrial occasioned by Richards's testimony about a shooting in Vallejo. However, appellant made no such request[3] and in such circumstances a mistrial ordered by the trial court on its own motion will bar a re-trial under the double jeopardy clause. (*Curry v. Superior Court* (1970) 2 Cal.3d 707, 713–714.) Accordingly, we address only appellant's contention that "at least, the motion for new trial should have been granted." We reject that contention.

### 1. *Standard of Review*

" 'We review a trial court's ruling on a motion for a new trial under a deferential abuse-of-discretion standard.' [Citations.] ' "A trial court's ruling on a motion for new trial is so completely within that court's discretion that a reviewing court will not disturb the ruling absent a manifest and unmistakable abuse of that discretion." ' " (*People v. Thompson* (2010) 49 Cal.4th 79, 140.)

### 2. *In the Light of the Trial Court's Curative Admonition, No Abuse of Discretion Appears*

Appellant's motion for new trial mentioned Richards's testimony only once. In a section alleging "[o]ther violations" constituting prosecutorial misconduct, appellant argued that "the prosecution violated the *in limine* ruling prohibiting Evidence Code 1101 prior bad conduct evidence from Santa Clara County through eliciting testimony from [Lieutenant] Nick Richards, who offered testimony of Mr. Jones engaging in some similar crime in Santa

---

[3] The trial court asked appellant, "[a]re you asking me to declare a mistrial or only a dismissal with prejudice?" Appellant replied, "[o]nly with prejudice at this point."

Clara." Indeed, Richards testified that he spoke to Vallejo Police Department Sergeant Greenberg. And when the prosecutor asked Richards whether he spoke to Greenberg "about anything that . . . might relate to" a particular "Vallejo shooting," Richards replied: "Yes. I told him what I was investigating for my city, and I asked him if he had any similar crimes happen."

The clear implication of Richards's testimony was that the crime he was investigating for the city of Santa Clara was a shooting "similar" to the one that occurred in Vallejo. That implication ran afoul of the court's *in limine* ruling that the Santa Clara crime was inadmissible as other-crimes evidence under Evidence Code section 1101 and that Richards was not to testify as to "[h]ow and why" he developed an investigative lead in relation to the Vallejo shooting.

However, the trial court sustained appellant's objections to the offending portions of Richards's testimony. That testimony was stricken from the record, and in turn, the jurors were admonished that any such stricken testimony must be "disregard[ed]" and "not consider[ed]." "In the absence of evidence to the contrary, we presume the jury heeded the admonition." (*People v. Burgener* (2003) 29 Cal. 4th 833, 874.) We therefore find no abuse of discretion in the trial court's denial of appellant's motion for a new trial.

**D. Alleged Error in Failing to Instruct the Jury on Involuntary Manslaughter**

Appellant argues that the trial court erred in failing, sua sponte, to instruct the jury on involuntary manslaughter as a lesser included offense for Count 1. We disagree.

"We review the trial court's failure to instruct on a lesser included offense de novo . . . considering the evidence in the light most favorable to the

11

defendant." (*People v. Brothers* (2015) 236 Cal.App.4th 24, 30.)  However, if "defendants cannot demonstrate a reasonable probability that the jury would have . . . reached a different result" in the absence of such an error, the "error is harmless" and no grounds for reversal appear.  (*People v. Gonzales* (2018) 5 Cal.5th 186, 191.)

Here, the jury could have convicted appellant of second degree murder. Instead, having been instructed that a *first* degree murder conviction requires additional proof beyond a reasonable doubt that the defendant killed willfully, deliberately, and with premeditation, the jury found him guilty of that crime.  Because the jury found that appellant acted willfully, deliberately, and with premeditation, there is no reasonable probability that it would have convicted appellant of involuntary manslaughter if it had been instructed on that offense, which requires a lack of malice.  For that reason, we find no reversible error in the trial court's purported failure to instruct the jury on involuntary manslaughter.[4]  (§ 192.)

## III.  DISPOSITION

We reverse the judgment as to the true finding concerning appellant's December 2009 conviction for second degree robbery and affirm the judgment in all other respects.  On remand, the trial court is instructed to strike that true finding from its records and resentence appellant accordingly.

---

[4] Nor would it make any difference if we were to employ the "harmless beyond a reasonable doubt" standard for prejudicial error articulated in *People v. Chapman* (1967) 386 U.S. 18, 22–23, as appellant urges us to do. Our analysis leads us to conclude that the error was harmless under any standard.

_____

Langhorne, J. *

We concur:

_____

Simons, Acting P.J.

_____

Burns, J.

*People v. Jones* / A163558

* Judge of the Superior Court of Napa County, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

13

A163558 / People v. Jones

Trial Court:  Superior Court of Solano County

Trial Judge:      William Pendergast III

Counsel:     Mark David Greenberg, By Appointment of the First District Court of Appeal under the First District Appellate Project, for Defendant and Appellant.

Rob Bonta, Attorney General of California; Lance E. Winters, Chief Assistant Attorney General; Jeffrey M. Laurence, Senior Assistant Attorney General; Catherine A. Rivlin, Supervising Deputy Attorney General; Ann P. Wathen and Basil Williams, Deputy Attorneys General, for Plaintiff and Respondent.