Filed 11/9/15  P. v. Mayer CA2/5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| THE PEOPLE, | B254286 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. GA086796) |
| v. | |
| LAURA LYNNE MAYER, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of the County of Los Angeles, Michael Villalobos, Judge.  Affirmed.

Joanna Rehm, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Lance E. Winters, Senior Assistant Attorney General, Victoria B. Wilson, Supervising Deputy Attorney General, Theresa A. Patterson, Deputy Attorney General, for Plaintiff and Respondent.

## INTRODUCTION

Defendant and appellant Laura Lynne Mayer (defendant) was convicted of commercial burglary (Pen. Code, § 459[1]) and forgery (§ 470, subd. (d)). On appeal, defendant contends that the trial court erred in admitting evidence over her objections for lack of foundation and chain of custody; the trial court erred when it failed to instruct the jury that to convict defendant of forgery it had to find she committed forgery in a particular store; the verdicts were irregular; there was prosecutorial misconduct; and her convictions must be reduced to misdemeanors. We affirm the judgment.

## BACKGROUND

### A.      Factual Background

#### 1.      *Prosecution Evidence*

##### a)      The Charged Offenses

On October 28, 2011, Gina Scott was working as a manager at an Albertsons' store located in the City of Arcadia. Defendant approached Scott at the customer service desk. On three to four prior occasions, Scott had seen defendant in the store attempting to return merchandise. On this occasion, defendant sought to return vitamins for a refund. Defendant handed a receipt to Scott which indicated that the vitamins had been purchased at an Albertsons' store located in Tujunga. Scott called Mary Grady, the loss prevention officer, for assistance.

Grady approached the customer service desk and examined the purchase receipt. She testified that defendant was the person seeking the refund. Grady told defendant that

---

[1]      All statutory citations are to the Penal Code unless otherwise noted.

she would be right back, and she took the purchase receipt[2] into her office while Scott remained with defendant. Grady entered the transaction information from the purchase receipt into the Albertsons' computer system in an attempt to find the transaction. According to the information in the computer system, no vitamins were sold during the transaction listed on the receipt. The receipt appeared on its face to be authentic, but based on entering the transaction information from the receipt into the Albertsons' computer system, Grady did not believe it was an accurate record of the transaction. After Grady had been in her office for about 10 to 20 minutes, she returned to the customer service desk and found that defendant was no longer there.

Scott testified that defendant became "antsy" while waiting for her refund, and Scott went to Grady's office "to see what was taking [Grady] so long."[3] When Scott returned to the customer service desk, defendant had left with the vitamins. Still photographs obtained from the store's surveillance video cameras were introduced into evidence at trial, and Scott testified that they depicted her and defendant at the service desk.

### b) The Uncharged Incidents

The prosecutor introduced evidence of similar "prior uncharged crimes" pursuant to Evidence Code section 1101.

### i) Glendora

On October 28, 2011, Kenneth Benjamin was working as a lobby supervisor at an Albertsons store located in the City of Glendora. Defendant had two bottles of vitamins in her possession and approached Benjamin at the customer service counter. Defendant gave Benjamin a purchase receipt and asked him to give her a refund for the vitamins. Benjamin generated a return receipt, and defendant signed it. Benjamin stapled together

---

[2]     Scott testified that Grady wrote down relevant information from the receipt and Scott maintained possession of the receipt.

[3]     Scott testified that she took the receipt to Grady's office.

3

the receipt for the purchase of the vitamins and the return receipt, placed the receipts in a drawer, and gave defendant a cash refund. Benjamin explained that thereafter the purchase receipt would typically go to "the office," and it eventually would be transferred to the corporate office.

The purchase receipt purportedly given to Benjamin by defendant was marked as Exhibit 6. At trial, Benjamin was unable to recognize Exhibit 6, but he stated that it appeared to be a valid Albertsons' receipt from the store in Tujunga.

Kimberly Sempson, an Albertsons loss prevention employee, testified that she investigated an incident involving the return of vitamins at the store located in Glendora. Sempson identified Exhibit 6 as being the purchase receipt presented in connection with a refund of vitamins at the store.

Sempson entered the transaction information listed on the purchase receipt into the store's computer system. The information in the computer did not match the transaction information listed on the receipt. Sempson therefore believed that the purchase receipt marked as Exhibit 6 was not authentic. A video recording depicting the transaction at the Glendora store matching the time on the return receipt was played for the jury.

### ii) Whittier

On November 10, 2011, Christopher Holloway was working at an Albertsons store located in the City of Whittier, when a woman approached him and asked to return two bottles of vitamins, each valued at approximately $30. The woman handed Holloway a receipt for the purchase of the vitamins. Holloway verified that the products were listed on the receipt, and gave the woman a refund. Holloway testified that he was unable to identify defendant as the woman who returned the vitamins. Holloway placed the receipt in the register, and believed that thereafter the receipt would be transferred to the store's bookkeeper.

The receipt purportedly given to Holloway by defendant was marked as Exhibit 7. Holloway testified that he was unable to recognize the receipt that was marked as Exhibit 7, but he stated that it looked like a valid receipt.

4

Sempson, the Albertsons loss prevention employee, testified that she investigated the incident at the Albertsons' store located in Whittier, and identified Exhibit 7 as a receipt presented for a refund at that store. Sempson entered the transaction information listed on the purchase receipt into the store's computer system, but was unsuccessful in locating the transaction. Sempson therefore believed that the purchase receipt marked as Exhibit 7 was not authentic. A video recording depicting the transaction at the Whittier store matching the time on the return receipt was played for the jury.

### iii)    Temecula

On November 21, 2011, Carl Bonomo was working as a loss prevention specialist at an Albertsons store located in the City of Temecula. Defendant approached Bonomo at the customer service desk, said she wanted to return two bottles of vitamins that she had purchased from the Tujunga store, and gave the vitamins and a purchase receipt to Bonomo. Bonomo was suspicious of defendant's attempt to return the vitamins because earlier he had received a "Be on the Lookout" or "BOLO" report about a person attempting to return vitamins by presenting a fraudulent receipt. Defendant told him that she was returning the vitamins because her doctor said "it would counteract a prescription" she used. Bonomo recalled that these "exact words" were stated in the BOLO report.

Bonomo kept the vitamins and receipt, gave defendant a written trespass warning, and stated that she could be arrested for trespassing if she entered into "another Albertsons's building." Bonomo identified Exhibit 8 as a photocopy of the purchase receipt that defendant presented to him, and testified that he believed the receipt was not legitimate because the logo depicted on the receipt did not appear in the proper position. He identified defendant at trial as the person who attempted to return the vitamins.

Sempson testified that she investigated the incident, entered the transaction information listed on Exhibit 8 into the store's computer system, and was unsuccessful in locating the transaction. Sempson therefore believed that the receipt marked as Exhibit 8 was not authentic.

5

## 2. *Defendant's Evidence*

Defendant testified on her own behalf. She said that she purchased vitamins on many occasions; sometimes she bought them for personal use, and sometimes she put them in gift baskets to thank her business customers. She would return the vitamins if she had more than she needed. Defendant denied being in the Albertsons store in Arcadia on October 28, 2011.

Defendant also denied going to Albertsons stores in West Covina and San Dimas on October 28, 2011. When defendant was shown Exhibit 14, photographs from the security videos at the West Covina and San Dimas stores depicting refund transactions on October 28, 2011, she stated that the person in the photographs "looks like" her, but she was unsure whether she as the person depicted therein because the photographs were "grainy."

Defendant also denied being in Glendora on October 28, 2011, and denied going to an Albertsons store in Glendora on that date. Defendant admitted that the video recording from the Glendora Albertsons showed a person who looked like her, but she believes that the recording had been "doctored."

Defendant testified that she did not recall, but it is possible that she went to Albertsons in Whittier on November 10, 2011, and returned vitamins. If she went to the Whittier store then, she did not conduct a fraudulent transaction. Defendant said it was possible she was the person depicted in the video recording from the Albertsons' store in Whittier, but that the video recording was too "dark and grainy" for her to be certain of it.

Defendant conceded that she attempted to return vitamins at an Albertsons' store in Temecula on November 21, 2011. Defendant did not recognize Bonomo as the person to whom she presented the vitamins and receipt to obtain a refund. Defendant was denied the refund and was issued a trespass warning.

## 3. *Rebuttal and Surrebuttal Evidence*

The jury was shown photographs (Exhibit 14), which Sempson testified were from the October 28, 2011, security videos at the Albertsons' stores located in the cities of

6

West Covina and San Dimas, depicting refund transactions.[4]  San Diego County Deputy Sheriff William Kerr searched defendant's residence, and found a computer, a printer, a USB flash drive, several packages of unopened vitamins, a roll of receipt tape, and printed and unprinted receipts.  The receipts contained various store logos, including one for Albertsons.  The flash drive contained a program and data that appeared to allow one to "drop and drag" transaction numbers, store numbers, cashier numbers, and item numbers to create a receipt.

Defendant testified that the flash drive found by Deputy Kerr contained her graphic design work.  It was her practice to scan receipts for purchases and maintain them on her computer, and she would reprint stored receipts when needed.

B.  **Procedural Background**

The District Attorney of Los Angeles County filed an information charging defendant with second degree commercial burglary in violation of section 459 (count 1) and forgery in violation of section 470, subdivision (d) (count 2).  Following a trial, the jury found defendant guilty on both counts.

The trial court suspended imposition of sentence and defendant was placed on probation for a period of three years on the condition that she serves 180 days in county jail.  The trial court awarded defendant custody credit, and ordered her to pay various fees, fines, and penalties.  Defendant filed a timely notice of appeal.

---

[4]  The prosecution later argued to the jury that defendant was the person depicted in these photographs.  As noted, the Exhibit 14 was previously shown to defendant who testified that she was unsure whether she was the person depicted in it.  It does not appear that the West Covina and San Dimas events were uncharged offenses, and no objection to the evidence was made on that basis.  Evidence of the events at these stores was not presented during the prosecutor's case-in-chief.

## DISCUSSION

### A.    Admission of Evidence

Defendant contends that the trial court erred, and denied defendant her state and federal due process rights, in admitting into evidence the receipt and video exhibits concerning the Glendora and Whittier incidents over defendant's objections for lack of foundation and chain of custody. We disagree.

#### 1.    *Standard of Review*

A "trial court is 'vested with broad discretion in ruling on the admissibility of evidence.' [Citation.] '[T]he court's ruling will be upset only if there is a clear showing of an abuse of discretion.' [Citation.]" (*Tudor Ranches, Inc. v. State Comp. Ins. Fund* (1998) 65 Cal.App.4th 1422, 1431.) The admission of "uncharged conduct" evidence under Evidence Code section 1101, subsection (b) is reviewed for abuse of discretion. (*People v. Roldan* (2005) 35 Cal.4th 646, 705, disapproved on other grounds in *People v. Doolin* (2009) 45 Cal.4th 390, 421, & fn. 22.)

#### 2.    *Applicable Law*

Evidence Code section 403 states, "The proponent of the proffered evidence has the burden of producing evidence as to the existence of the preliminary fact, and the proffered evidence is inadmissible unless the court finds that there is evidence sufficient to sustain a finding of the existence of the preliminary fact, when: [¶] (1) The relevance of the proffered evidence depends on the existence of the preliminary fact . . . ." (Evid. Code, § 400.) "Relevant evidence" is evidence that has "any tendency in reason to prove or disprove any disputed fact that is of consequence to the determination of the action." (Evid. Code, § 210.)

The foundation may be laid for physical evidence by establishing chain of custody. To establish a chain of custody, "the proponent of the evidence must demonstrate to the satisfaction of the trial court ""'that, taking all the circumstances into

account including the ease or difficulty with which the particular evidence could have been altered, it is reasonably certain that there was no alteration.'"'" (*People v. Richardson* (2008) 43 Cal.4th 959, 1003.) "'"'The requirement of reasonable certainty is not met when some vital link in the chain of possession is not accounted for, because then it is as likely as not that the evidence analyzed was not the evidence originally received. Left to such speculation the court must exclude the evidence. [Citations.] Conversely, when it is the barest speculation that there was tampering, it is proper to admit the evidence and let what doubt remains go to its weight." [Citations.]' [Citations.]" (*People v. Catlin* (2001) 26 Cal.4th 81, 134.)

### 3. *Background Facts*

As noted above, the prosecution presented evidence of uncharged incidents at Albertsons stores located in, inter alia, Whittier and Glendora. Pursuant to the request of defendant's counsel, the trial court held an Evidence Code section 402 hearing as to whether a foundation can be provided for the admission into evidence of the purchase receipts provided for the refunds made at the stores located in Glendora and Whittier (Exhibits 6 and 7, respectively), and of the video recordings of the return transactions from those Albertsons' stores that the prosecutor intended to show to the jury (Exhibits 12 and 13, respectively). Sempson's testimony at trial and at the Evidence Code section 402 hearing regarding the process of obtaining the evidence essentially was the same for both store locations.

Sempson said that Eric Chase, an Albertsons' employee, sent her refund receipt information regarding refunds for vitamins within a specified price range because it was suspected that a person who made several returns was the same person. The refund receipt information for the given stores included the date and time that the refund transactions occurred. Sempson went to the stores located in Whittier and Glendora, and based on the refund receipt information, viewed video recordings of the transactions. Sempson testified that in reviewing the video recordings, "it appeared to be the same person in [*sic*] all of those refunds. Sempson asked the bookkeepers for each store for the

9

records of the return transactions depicted in the video recordings (Exhibits 12 and 13), and they gave her Exhibits 6 and 7—the receipts of the purchase transactions provided for the refunds made at the stores.

The trial court stated, "Correct me if I am wrong, but it seems to me that the evidence is that when this witness was alerted to the incidence [*sic*], she went to the store. She looked up the video from the transaction in question. She pulled the receipt from the bookkeeper and based on the video of . . . the transaction, the transaction from the register for the refund, and based on the receipt that was recovered, that is how it's all connected." Defendant's counsel argued that the People had not causally tied the purchase receipt with the video. The trial court replied that this argument went to the weight of the evidence rather than its admissibility, and invited defendant's counsel to make such an argument to the jury. The trial court stated, "[I]t seems to me that it's clearly admissible. [If] you want to argue . . . how it's connected to the defendant, that's one thing. But it doesn't really go to admissibility." Thereafter, the video recordings depicting the return transactions at the Albertsons' stores located in Whittier and Glendora were played for the jury.

After the People rested, defendant objected to Exhibits 6, 7, 12 and 13 on the ground of lack of foundation and chain of custody. The trial court stated, "[T]he fact that the receipts were held by the store, whether it was the bookkeeper or someone else who had custody of those receipts, I think that the fact that a witness collected the receipts from the store, and she was able to match to the best of her ability those receipts that were received to the transaction that occurred on the video about the alleged particular date and time. [¶] So it does rely on her investigation and her ability to do that. But I think that the fact that it was held by the store and collected by her, I think is sufficient foundation to have them received into evidence."

### 4. Analysis

The trial court did not abuse its discretion in admitting into evidence the receipt and video exhibits over defendant's objections for lack of foundation and chain of

10

custody. There is evidence that Sempson obtained the video recordings (Exhibits 12 and 13) from the Albertsons' Whittier and Glendora stores based on the refund receipt information given to her by Chase, an Albertsons' employee; and Sempson obtained the purchase receipts (Exhibits 6 and 7) from the bookkeepers at the stores.

Sempson said that she conducted an investigation of the return incidents at the Albertson stores located in Whittier and Glendora; received refund receipt information from Chase; obtained and viewed video recordings of return transactions from the Whittier and Glendora stores based on the information from the refund receipts; saw that the video recordings were of the same persons; asked the bookkeepers for each store for the records of the return transactions depicted in the video recordings; and received from the bookkeepers Exhibits 6 and 7—the receipts of the purchase transactions provided for the refunds made at the stores located in Glendora and Whittier. The evidence is sufficient to sustain a finding that the exhibits are what the prosecutor claimed them to be. (Evid. Code, § 1400)—Exhibits 6 and 7 were receipts presented for a refund at the Whittier and Glendora stores, and Exhibits 12 and 13 were video recordings of the return transactions at those stores. In addition, this evidence establishes that it is reasonably certain that the exhibits were not altered (*People v. Richardson*, *supra*, 43 Cal.4th at p. 1003), or at most provides only the barest speculation that they were altered. (*People v. Catlin*, *supra*, 26 Cal.4th at p. 134.) As stated by the Supreme Court in citing a quote from a treatise, "'While a perfect chain of custody is desirable, gaps will not result in the exclusion of the evidence, so long as the links offered connect the evidence with the case and raise no serious questions of tampering.'" (*People v. Catlin, supra,* 26 Cal.4th at p. 134.

Defendant contends that there was not a sufficient foundation for the exhibits (Evid. Code, § 403) because the prosecutor had not established that they concerned defendant. Although the evidence did not conclusively establish that Exhibits 6 or 7 were the purchase receipts defendant presented in seeking a refund, or that Exhibits 12 or 13 were of defendant, they had a "tendency in reason to prove" that they were relevant. (Evid. Code, § 210.) Chase obtained refund receipt information regarding refunds for

11

vitamins within a specified price range, and provided that information to Sempson. Using that information provided by Chase, Sempson obtained and viewed Exhibits 12 and 13, the video recordings of return transactions at the Whittier and Glendora stores. Sempson saw that the same person was depicted in the video recordings. At trial, the video recordings were shown to the jury. She obtained Exhibits 6 and 7, the purchase receipts for those recorded transactions, from each of the store's bookkeepers. The ultimate decision of whether the purchase receipts and video recordings related to defendant was left to the jury. The trial court did not abuse its discretion in admitting into evidence the receipt and video exhibits.

## B. Jury Questions

Defendant contends that the trial court erred when it provided incomplete responses to questions posed by the jury, and failed to instruct the jury that to convict defendant of forgery and burglary it had to find defendant specifically committed those crimes in the Arcadia store. We disagree.

### 1. Standard of Review

We review claims of instructional error de novo. (*People v. Manriquez* (2005) 37 Cal.4th 547, 581; *People v. Posey* (2004) 32 Cal.4th 193, 218.) When the jury is deliberating, however, decisions by a trial court to instruct or not to instruct, in its exercise of its supervision over a deliberating jury, are reviewed for abuse of discretion. (*People v. Waidla* (2000) 22 Cal.4th 690, 745-746.)

### 2. Applicable Law

A court has a sua sponte duty to "instruct on general principles of law relevant to the issues raised by the evidence and necessary for the jury's understanding of the case." (*People v. Martinez* (2010) 47 Cal.4th 911, 953.) Section 1138 provides in relevant part: "After the jury have retired for deliberation . . . if they desire to be informed on any point of law arising in the case . . . the information required must be given . . . ." The trial

12

court has a duty to "to clear up any instructional confusion expressed by the jury." (*People v. Gonzalez* (1990) 51 Cal.3d 1179, 1212, superseded by statute on another ground as stated in *In re Steele* (2004) 32 Cal.4th 682, 691.) "Under [section 1138], the trial court 'has a primary duty to help the jury understand the legal principles it is asked to apply. [Citation.] This does not mean the court must always elaborate on the standard instructions. Where the original instructions are themselves full and complete, the court has discretion under [Penal Code] section 1138 to determine what additional explanations are sufficient to satisfy the jury's request for information. [Citation.] . . . [Citation.] . . . [A] court must do more than figuratively throw up its hands and tell the jury it cannot help. It must at least *consider* how it can best aid the jury.' [Citation.]" (*People v. Dominguez* (2004) 118 Cal.App.4th 651, 663.)

### 3.    *Background Facts*

The jury was instructed with CALCRIM No. 375 as follows: "The People presented evidence that the defendant committed the offense of burglary and forgery that were not charged in this case. [¶] . . . [¶] If you decide that the defendant committed those other offenses, you may but are not required to consider that evidence for the limited purpose of deciding whether or not the defendant acted with the intent to commit a theft or defraud, in this case, or the defendant had a common plan or scheme to commit the offenses alleged in this case. [¶] Do not consider this evidence for any other purpose." The jury also was instructed with CALCRIM No. 1700, that "[t]he defendant is charged in Count 1 with burglary," and with CALCRIM No. 1905, that "[t]he defendant is charged in Count 2 with forgery."

During jury deliberations, the jury submitted questions to the trial court: "Can the defendant be found guilty of the forgery count and not the burglary count?" (Question 1(a)); and "Does the forgery have to be in the Arcadia store or can it be in any store?" (Question 1(b)). The trial court advised counsel of the jury's questions, proposed to answer "Yes" to Question 1(a), and proposed to answer Question 1(b) by saying "the defendant is only charged with the forgery in the Arcadia store." Defendant's counsel

13

replied, "I submit." The trial court asked if there was any objection to the proposed answers. The prosecutor stated, "No," and defendant's counsel did not respond. The trial court stated, "Then those will be the answers." The trial court provided the jury with the responses it had proposed. As discussed below, the responses were appropriate. The jury resumed deliberations.

The jury asked a question concerning that status of their deliberations (Question 2), and then asked the trial court, "Is positive identification of the defendant in the Arcadia store required to support the other evidence to reach a verdict [on the burglary charge]?" (Question 3). After conferring telephonically with counsel regarding Question 3, the trial court provided the jury with the following response: "The People must prove beyond a reasonable doubt that it was the [defendant] that entered the Arcadia store and conducted the [burglary] transaction." After further deliberation, the jury found defendant guilty of forgery and burglary.

### 4. Analysis

#### a) Forfeiture

When the jury was given its instructions prior to deliberating, the trial court did not instruct the jury that defendant was only charged with forgery and burglary for conduct that occurred in the Albertsons' store located in Arcadia. For the first time on appeal, defendant contends that the trial court erred because it provided incomplete responses to the jury's Questions 1(b) and 3. There is no evidence in the record, however, that defendant's counsel objected to the trial court's proposed responses. Defendant's claimed error therefore has been forfeited. (*People v. Roldan*, *supra*, 35 Cal.4th at p. 729; *People v. Cooper* (1991) 53 Cal.3d 771, 847; *People v. Medina* (1990) 51 Cal.3d 870, 902.)

Defendant contends that by failing to object, she could not forfeit her contentions that the trial court had sua sponte duty to instruct the jury that to convict defendant of forgery or burglary, it had to find defendant committed forgery or burglary in the Arcadia

14

store. Those contentions were raised for the first time in her reply brief. Because defendant failed to raise these contentions in her opening brief, it is forfeited and we need not address it. (*People v. Bryant, Smith & Wheeler* (2014) 60 Cal.4th 335, 408; *Doe v. Roman Catholic Archbishop of Cashel and Emly* (2009) 177 Cal.App.4th 209, 219, fn. 4.)

b)       Merits

Even if we were to consider the merits of defendant's claims, we would conclude that the trial court did not err. Defendant contends the trial court's responses were incomplete because the trial court did not advise the jury specifically that the acts of forgery and burglary had to occur in the Arcadia store. While it is true that the trial court did not initially instruct the jury specifically that the acts of forgery and burglary had to occur in the Arcadia store, in responding to the jury's questions, the trial court advised the jury that defendant was charged only with the forgery in the Arcadia store and, "The People must prove beyond a reasonable doubt that it was the [defendant] that entered the Arcadia store and conducted the [burglary] transaction." The trial court's responses, therefore, were complete.

Defendant contends the trial court's responses were incomplete because they did not "clear up the jurors' misunderstanding about the limited use they could make of the . . . evidence" of the burglary and forgery offenses at the other stores that were not charged in this case. Based on the trial court's responses to the jury's questions, the jury was advised that to convict defendant of forgery or burglary, those acts had to have occurred in the Arcadia store. The burglary and forgery offenses that occurred in the other stores—Glendora, Whittier and Temecula—were not charged in this case. The jury was instructed with CALCRIM No. 375 that evidence of the offense of burglary and forgery that was not charged in this case (i.e., the offenses that occurred in the Glendora, Whittier and Temecula stores) may only be used "for the limited purpose of deciding whether or not the defendant acted with the intent to commit a theft or defraud, in this case, or the defendant had a common plan or scheme to commit the offenses alleged in this case," and not for any other purpose. Despite defendant's contention, the jury was

15

instructed on the limited use that they could make of the evidence of the burglary and forgery offenses that occurred in the Glendora, Whittier and Temecula stores.

We also disagree with defendant that the trial court erred by failing to instruct the jury, sua sponte, that to convict defendant of forgery or burglary, it had to find defendant committed the acts in the Arcadia store. A court has a sua sponte duty to "instruct on general principles of law" relevant to the case. (*People v. Martinez, supra,* 47 Cal.4th at p. 953.) Instructing on the location of the forgery and burglary incidents are not general principles of law. In any event, as discussed above, the trial court advised the jury that the acts of forgery and burglary had to occur in the Arcadia store. That is, the trial court cured any error by the trial court in failing to instruct sua sponte on the location of the offense. (*People v. Gonzales* (1999) 74 Cal.App.4th 382, 390, disapproved on another point in *People v. Anderson* (2011) 51 Cal.4th 989, 998, fn. 3.)

### C.    Jury Verdicts

Defendant contends that the trial court erred in sealing the jury's verdict on count 2 while instructing the jury to continue its deliberation on count 1, and in not directing the jury to reconsider their sealed verdict. We disagree.

### 1.    Applicable Law

"A trial court has several options available when a jury reports it is deadlocked on one or more counts while it has arrived at a verdict on another count. One option is for the trial court to receive, to acknowledge, and to record each verdict as the jury arrives at it, sending the jury back to deliberate on the yet unresolved counts. Such a procedure is consistent with . . . section 1164.[5] (*People v. Rigney* (1961) 55 Cal.2d 236, 246 [10

---

[5]    Section 1164 provides, "(a) When the verdict given is receivable by the court, the clerk shall record it in full upon the minutes, and if requested by any party shall read it to the jury, and inquire of them whether it is their verdict. If any juror disagrees, the fact shall be entered upon the minutes and the jury again sent out; but if no disagreement is expressed, the verdict is complete, and the jury shall, subject to subdivision (b), be discharged from the case. [¶] (b) No jury shall be discharged until the court has verified

Cal.Rptr. 625, 359 P.2d 23, 98 A.L.R.2d 186].) . . . [A]nother acceptable option available to the trial court is not to receive any verdicts on decided counts from the jury until they have finished deliberations on all other counts. (*People v. Finch* (1963) 213 Cal.App.2d 752, 762 [29 Cal.Rptr. 420].) Under the *Finch* approach, a jury would thus be able to reconsider verdicts that they had already agreed upon while at the [same] time further deliberating on the counts that remained undecided . . . ." (*People v. Hernandez* (1985) 163 Cal.App.3d 645, 658.) In *People v. Hernandez*, *supra*, 163 Cal.App.3d 645, the trial court utilized yet another approach—sealing the jury's verdict on one count while allowing the jury to continue its deliberation of the other count, and then upon the jury's request, permitting the jury to reconsider its decision in the sealed count. (*Id.* at p. 649.) The court stated that although the trial court did not follow the *Finch* approach, it was "not persuaded" that the trial court's approach was erroneous because the "net effect" in allowing the trial court to ask to reconsider the verdict "was the same" as the *Finch* approach. (*Id.* at p. 658, fn. 9.)

Section 1161 provides, "When there is a verdict of conviction, in which it appears to the court that the jury have mistaken the law, the court may explain the reason for that opinion and direct the jury to reconsider their verdict . . . ." (*People v. Carbajal* (2013) 56 Cal.4th 521, 536 ["when the jury returns a verdict of conviction that the court believes to be in error, the court—exercising its authority under section 1161—should take care to thoroughly instruct the jury on the applicable law and to explain why the court believes the verdict reflects the jury's mistake of the law"].)

2.      *Background Facts*

As discussed above, the jury asked a question of the trial court concerning that status of their deliberations: "The jury have [*sic*] reached a verdict for one count and

_____

on the record that the jury has either reached a verdict or has formally declared its inability to reach a verdict on all issues before it, including, but not limited to, the degree of the crime or crimes charged, and the truth of any alleged prior conviction whether in the same proceeding or in a bifurcated proceeding."

17

cannot agree on the other count. [¶] Could the court please advise on what the next step should be?" (Question 2). The jury entered the courtroom, and the foreperson indicated that there was a chance that further deliberations might result in a verdict. The trial court then asked the jury foreperson whether any further instructions or answers to questions might assist the jury, and the foreperson replied, "Maybe." The trial court advised the jurors to discuss whether they wanted to submit to it any additional questions. The court also asked the jurors to deliver to the bailiff, in a sealed envelope, the verdict form for the count in which a verdict had been reached. The jury did so and resumed deliberations.

After deliberating further, the jury advised the court that it had reached a verdict. The jury entered the courtroom, and the foreperson confirmed that a verdict had been reached. The trial court stated that it had previously received the verdict form for count 2 (forgery) in a sealed envelope, and it "just opened" the sealed envelope. The trial court also acknowledged that the verdict form for count 1 (commercial burglary) had just been received. The clerk read aloud the verdicts of guilty on both counts, and each of the jurors confirmed that they were his or her individual verdicts.

### 3. *Analysis*

The trial court did not err in sealing the jury's verdict on count 2 while instructing the jury to continue its deliberation on count 1. The trial court in *People v. Hernandez*, *supra*, 163 Cal.App.3d 645, utilized the same approach, and upon the jury's request, permitted the jury to reconsider its decision in the sealed count. (*Id.* at p. 649.) Although here the jury did not request to reconsider its decision in the sealed count, it had the right to do so if it so desired. "[I]f any juror states that the verdict does not reflect his or her true intent, sections 1163 and 1164, subdivision (a) require the court to order further deliberations. In these ways, the statutory scheme provides courts with specific mechanisms for prompting a jury's reconsideration of an erroneous or inconsistent verdict." (*People v. Carbajal*, *supra*, 56 Cal.4th at p. 537.) Each of the jurors confirmed that the verdicts were his or her individual verdicts.

18

Section 1161 does not provide that a trial court "must" direct the jury to reconsider their verdict when it appears to the court that the jury had mistaken the law. The statute on its face provides that a trial court "may" direct the jury to reconsider their verdict. In addition, *People v. Carbajal*, *supra*, 56 Cal.4th at page 537 merely provides that the trial court "should" comply the provisions of section 1161. That is, the trial court is permitted to require the jury to reconsider their verdict when it suspects that the jury made a mistake of law, but it is not mandatory for the trial court to do so.

In any event, there is no evidence that the trial court found that the jury's guilty verdict on count 2 (forgery), the sealed verdict, appeared to have been a result of a mistake in the law. Defendant essentially contends that the trial court must have known that the sealed verdict on count 2 (forgery) was the result of a mistake in the law because the jury thereafter had posed Question 3 asking whether a positive identification of defendant in the Arcadia store was required to support a verdict on count 1 (burglary).

It cannot reasonably be inferred that the trial court knew the sealed verdict was a result of a mistake in the law. The trial court learned of the contents of the sealed verdict on count 2 at the same time it learned of the contents of the subsequent verdict on count 1. Because the jury found defendant guilty on count 1 (burglary) after asking whether a positive identification of defendant in the Arcadia store was required (Question 3), the sealed verdict on count 2 (forgery), in which the jury also found defendant guilty, would not have appeared to be the result of a mistake in the law.


D.      **Prosecutorial Misconduct**

Defendant contends that the prosecutor committed misconduct by misrepresenting that defendant committed 17 prior similar crimes, causing the trial court, at the preliminary hearing, to deny defendant's motion to reduce the offenses to misdemeanors; failing to provide timely and complete discovery as to the prior similar crimes; and introducing evidence lacking adequate foundation in an attempt to prove at trial three of the prior similar crimes, and by relying on that evidence during closing argument. Defendant has forfeited her contentions.

19

*1.      Applicable Law*

"""A prosecutor's misconduct[6] violates the Fourteenth Amendment to the United States Constitution when it 'infects the trial with such unfairness as to make the conviction a denial of due process.' [Citations.]  In other words, the misconduct must be 'of sufficient significance to result in the denial of the defendant's right to a fair trial.' [Citation.]  A prosecutor's misconduct that does not render a trial fundamentally unfair nevertheless violates California law if it involves 'the use of deceptive or reprehensible methods to attempt to persuade either the court or the jury.'  [Citations.]"  [Citations.]' [Citation.]"  (*People v. Lopez* (2013) 56 Cal.4th 1028, 1072.)

*2.      Background Facts*

a)      The Preliminary Hearing

At the preliminary hearing, defendant's counsel moved to reduce both offenses. The prosecutor opposed the motion, arguing that defendant's conduct was sophisticated because she prepared a fraudulent receipt prior to entering the store, and Albertsons' conducted an investigation and concluded that defendant had engaged in similar thefts in various Albertsons stores throughout Southern California.

The trial court asked whether charges had been filed in connection with any of the incident of prior similar crimes, and the prosecutor deferred "to the detective."  Arcadia Police Detective Brian Oberon replied that one of the cases had been dismissed, but there were several pending cases in Los Angeles County and Orange County.  The prosecutor then referred to surveillance photographs of a person resembling defendant, who was involved in the various similar incidents.

---

**6**      "[T]he term prosecutorial 'misconduct' is somewhat of a misnomer to the extent that it suggests a prosecutor must act with a culpable state of mind.  A more apt description of the transgression is prosecutorial error."  (*People v. Hill* (1998) 17 Cal.4th 800, 823, fn. 1.)

20

Defendant's counsel argued that there had been no convictions in any of the prior cases. The trial court agreed with the assertion by defendant's counsel that defendant was innocent until proven guilty, but noted that defendant's motion to reduce the offenses to misdemeanors was based in large part on the argument that the instant offenses for which defendant is now charged were based on an isolated incident. The trial court stated the argument that the present crimes are an isolated incident was undermined by the information suggesting that defendant had been involved in other similar incidents. The trial court therefore denied defendant's motion without prejudice.

### b) The Discovery

On April 30, 2013, the prosecutor filed a motion in limine seeking to admit evidence of uncharged incidents under Evidence Code section 1101, subdivision (b). The written motion provided a summary of the incident at bar and 15 prior incidents. On June 4, 2013, at a pretrial conference held in the calendar court, the prosecutor sought a ruling on the motion in limine requesting an advanced ruling on which prior incidents would be admissible because he wanted to know what witnesses "need[ed]" to be subpoenaed. The prosecutor stated that the prior incidents occurred in 17 different cities. The calendar court stated that the judge assigned to the trial of this matter would likely impose a limit on the number of prior incidents. The prosecutor said that he needed to know what evidence he would be permitted to introduce at an opening statement to the jury. The calendar court stated that it was deferring the matter to the trial judge who ultimately is assigned to the case, advised the prosecutor to "subpoena whoever [*sic*] you feel you need to subpoena," and ordered the parties to return at a later date.

On October 24, 2013, after several continuances, the case was assigned to a trial judge, and the matter was continued to October 28, 2013. On October 28, 2013, defendant filed a trial brief arguing, inter alia, that all evidence of prior incidents should be excluded because of the prosecutor's failure to provide timely discovery. Defendant argued that she had not been provided the names of the potential witnesses until October 27, 2013. Attached to defendant's trial brief was an email from the prosecutor stating

21

that the prosecutor would seek to introduce evidence of the prior incidents in Glendora, Dana Point, Whittier, Temecula, and San Diego. Also attached to defendant's trial brief was the prosecutor's witness list, which included the names and contact information for witnesses as to the prior incidents in Temecula, Glendora, Whittier, and Riverside. On October 28, 2013, jury selection commenced.

Following jury selection, the trial court revisited the admissibility of Evidence Code section 1101, subdivision (b) evidence. The trial court found the evidence to be admissible under Evidence Code sections 1101, subdivision (b) and 352. The trial court did not address defendant's argument that the evidence should be excluded as a sanction for late discovery, and defendant did not at that time request a ruling on that issue.

### c) Trial

At trial, as noted above, the prosecutor presented evidence as to incidents at the Albertsons' stores located in Glendora, Whittier, and Temecula. During closing argument, in urging the jury to convict defendant on the charged offenses, the prosecutor relied, in part, on defendant having engaged in similar conduct in the uncharged incidents.

### 3. Analysis

The Attorney General contends that defendant forfeited her contention that there was prosecutorial misconduct because defendant did not object on those grounds and did not seek to have the jury admonished. "'As a general rule a defendant may not complain on appeal of prosecutorial misconduct unless . . . on [that] ground—the defendant made an assignment of misconduct and requested that the jury be admonished to disregard the impropriety.'" (*People v. Hill*, *supra*, 17 Cal.4th at p. 820.) "A failure to timely object and request an admonition will be excused if doing either would have been futile, or if an admonition would not have cured the harm. [Citation.]" (*People v. Linton* (2013) 56 Cal.4th 1146, 1205; *People v. Morales* (2001) 25 Cal.4th 34, 43-44.)

22

Defendant contends that to the extent the prosecutor's misconduct was made to the trial court, and not the jury, no admonition was required. We agree, but there still must be a specific objection on the grounds of prosecutorial misconduct to preserve the claim on appeal. (*People v. Linton, supra,* 56 Cal.4th at p. 1205; *People v. Roldan*, *supra*, 35 Cal.4th at p. 729; *People v. Hill*, *supra*, 17 Cal.4th at p. 820.) Even if there was "an ordinary evidentiary objection" it is insufficient to preserve a claim of prosecutorial misconduct. (*People v. Erickson* (1997) 57 Cal.App.4th 1391, 1403.) Defendant did not object on the ground of prosecutorial misconduct to the prosecutor having failed to provide timely and complete discovery as to prior similar crimes; or to the prosecutor introducing evidence of the prior similar crimes but lacking adequate foundation in an attempt to prove them, and by relying on that evidence during closing argument.

With regard to her contention that the prosecutor committed misconduct by stating at the preliminary hearing that defendant committed prior similar crimes, without having sufficient evidence to establish it, defendant also did not object on the ground of prosecutorial misconduct. Defendant contends that she could not make such an objection at the preliminary hearing because at that time she did not know what evidence, if any, the prosecutor had to prove those incidents. That may be true, but at no time did defendant object on the ground of prosecutorial misconduct. Defendant has forfeited her contention that there was prosecutorial misconduct because she did not object on those grounds at any time before the trial court.

Even if we were to consider the merits of defendant's contention that the prosecutor committed misconduct by stating at the preliminary hearing that defendant committed prior similar crimes, without having sufficient evidence to establish it, defendant does not establish that the prosecutor did not have sufficient evidence to establish that defendant committed the prior crimes. Indeed the prosecutor presented sufficient evidence to at least reasonably infer that defendant committed the prior crimes in the Albertson's stores located in Glendora, Whittier, and Temecula.

23

**E.     Reduction of the Crimes to Misdemeanors**

Defendant contends that her commercial burglary and forgery convictions must be reduced to misdemeanors.  We disagree.


### 1.     *Applicable Law*

"On November 4, 2014, California voters enacted Proposition 47, 'The Safe Neighborhoods and Schools Act,' to maximize sentencing alternatives for nonserious, nonviolent crimes.  [Citations.]" (*People v. McCoy* (2015) 239 Cal.App.4th 431, 434.) Section 459.5, subdivision (a), established by Proposition 47, provides:  "[S]hoplifting is defined as entering a commercial establishment with intent to commit larceny while that establishment is open during regular business hours, where the value of the property that is taken or intended to be taken does not exceed nine hundred fifty dollars ($950).  Any other entry into a commercial establishment with intent to commit larceny is burglary. Shoplifting shall be punished as a misdemeanor . . . ."  Proposition 47 amended Section 473, subdivision (b), which section provides, "[A]ny person who is guilty of forgery relating to a check, bond, bank bill, note, cashier's check, traveler's check, or money order, where the value of the check, bond, bank bill, note, cashier's check, traveler's check, or money order does not exceed nine hundred fifty dollars ($950), shall be punishable by imprisonment in a county jail for not more than one year . . . ."

Proposition 47 also created section 1170.18, subdivision (a), which section provides, "A person currently serving a sentence for a conviction, whether by trial or plea, of a felony or felonies who would have been guilty of a misdemeanor under the act that added this section ('this act') had this act been in effect at the time of the offense may petition for a recall of sentence before the trial court that entered the judgment of conviction in his or her case to request resentencing . . . ."  Section 1170.18, subdivision (f) provides, "A person who has completed his or her sentence for a conviction, whether by trial or plea, of a felony or felonies who would have been guilty of a misdemeanor under this act had this act been in effect at the time of the offense, may file an application

24

before the trial court that entered the judgment of conviction in his or her case to have the felony conviction or convictions designated as misdemeanors."

### 2. *Analysis*

Defendant requests that we, in the first instance, or on remand to the trial court, reduce her convictions to misdemeanors pursuant to section 1170.18.[7] We reject defendant's request.

Section 1170.18 unambiguously states that the person who seeks relief pursuant to its provisions must do so through a petition or application to the trial court. (§ 1170.18, subds. (a) and (f).) In *People v. Shabazz* (2015) 237 Cal.App.4th 303 we said: "[T]he voters never intended that Proposition 47 would automatically apply to allow us to reduce defendant's . . . felonies to misdemeanors. . . . Proposition 47 does not apply retroactively so as to permit us to . . . direct that, upon remittitur issuance, defendants' convictions be designated misdemeanors. Defendant is limited to the statutory remedy set forth in section 1170.18, subdivision[s (a) and] (f). He must file [a petition or] an application in the trial court to have his felony convictions designated misdemeanors. [Citation.]" (*People v. Shabazz*, *supra*, 237 Cal.App.4th at p. 314.)

It should be noted that defendant may not have been "sentenced" because the trial court suspended imposition of sentence and defendant was placed on probation for a period of three years on the condition that she serve 180 days in county jail. (*People v. Howard* (1997) 16 Cal.4th 1081, 1087.) There is no evidence in the record whether defendant completed her conditional probation, or whether her probation was revoked and sentence imposed, which she may or may not have completed.

---

[7]  There appears to be a split of authority whether the trial court may entertain a section 1170.18, subdivision (a) petition for resentencing while an appeal is pending in the defendant's case. (See *People v. Scarbrough* (2015) 240 Cal.App.4th 916; *People v. Awad* (2015) 238 Cal.App.4th 215.)

## DISPOSITION

The judgment is affirmed.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS.


MOSK, J.


We concur:


TURNER, P. J.


KRIEGLER, J.